**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| **IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE & ERISA LITIGATION,** | **CASE NO. 2:09-md-2009** |
| James E. Warwick and Barbara Rhea Warwick, | |
| Plaintiffs, | |
| v. | |
| RMK High Income Fund, Inc., RMK Strategic Income Fund, Inc., RMK Advantage Income Fund, Inc., RMK Multi-Sector High Income Fund, Inc., Regions Financial Corporation, MK Holding, Inc., Morgan Asset Management, Inc., James C. Kelsoe, Jr., Carter E. Anthony, Brian B. Sullivan, Joseph Thompson Weller, Allen B. Morgan, and J. Kenneth Alderman, | **Case No. 2:13-cv-02653** |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Peter S. Fruin
**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000
(205) 254-1999 (fax)
pfruin@maynardcooper.com

Shepherd D. Tate
Michael A. Brady
**BASS, BERRY & SIMS PLC**
The Tower at Peabody Place
100 Peabody Place
Memphis, Tennessee 38103
(901) 543-5900
(901) 543-5999 (fax)
state@bassberry.com
mbrady@bassberry.com

{02687399.12}

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... iv

INDEX OF EXHIBITS AND ABBREVIATIONS ........................................................... xi

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................2

I.     THE FUNDS AND PLAINTIFFS' ALLEGATIONS .................................................2

II.    THE DEFENDANTS .................................................................................................4

III.   THE ARBITRATION .................................................................................................5

MOTION TO DISMISS STANDARD ................................................................................6

ARGUMENT ......................................................................................................................7

I.     PLAINTIFFS' CLAIMS ARE TIME-BARRED .......................................................7

     A.    The Applicable Statutes of Repose Bar Plaintiffs' Claims ................................7

          1.    The 1933 Act's three year statute of repose bars Plaintiffs' claims. ...........8

          2.    Sections 10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5 are
governed by a five year statute of repose that bars Plaintiffs'
claims. ..........................................................................................................9

          3.    The five-year statute of repose bars Plaintiffs' claims under the
Tennessee and Mississippi Securities Acts. .................................................9

          4.    Plaintiffs' Tennessee Consumer Protection Act claim is barred by
the five-year statute of repose. ....................................................................9

     B.    The Applicable Statutes of Limitations Bar Plaintiffs' Claims. ..........................10

          1.    Sections 11, 12(a)(2), and 15 of the 1933 Act are governed by a
one-year limitations period that bars Plaintiffs' claims. ...........................11

          2.    Sections 10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5 are
governed by a two-year limitations period that bars Plaintiffs'
claims. ........................................................................................................11

          3.    The two-year limitations period bars Plaintiffs' claim under the
Tennessee and Mississippi Securities Acts. ...............................................12

           i

4.      Plaintiffs' Tennessee Consumer Protection Act claim is barred by its one-year limitations period. ................................................12

C.      Tolling Does Not Save Plaintiffs' Claims. .........................................13

1.      American Pipe does not apply where an independent action is filed before determination of the class certification issue.................................13

2.      American Pipe does not toll the running of statutes of repose. .................14

3.      Any tolling of the statutes of limitations ceased when Plaintiffs opted-out of the class actions in their arbitration proceeding. ...................15

4.      The statute of limitations cannot be tolled for claims that were not asserted in the class actions........................................................16

II.     PLAINTIFFS' CLAIMS ARE BARRED BY THE PRECLUSIONARY DOCTRINE OF RES JUDICATA ..................................................................16

A.      Plaintiffs' Arbitration Proceeding Resulted in a Final Judgment on the Merits. .......................................................................................17

B.      Privity Exists Between the Parties to this Action and the Parties to the Arbitration for Purposes of Res Judicata. .............................................18

C.      The Arbitration Decided Issues and Causes of Action that Are the Subject of Plaintiffs' Complaint. ...................................................................19

III.    PLAINTIFFS' CLAIMS ARE DERIVATIVE, BELONG TO THE FUND COMPANIES, AND CANNOT BE BROUGHT ON AN INDIVIDUAL BASIS ..........20

IV.     PLAINTIFFS CANNOT SATISFY THE PLEADING REQUIREMENTS FOR THEIR FRAUD CLAIMS ........................................................................22

A.      The PSLRA Imposes Heightened Pleading Requirements Which Plaintiffs Fail to Meet. ....................................................................................23

1.      Plaintiffs' claims under the 1933 and 1934 Act fail to meet the heightened pleading requirements for scienter under the PSLRA............23

(a)     Required State of Mind................................................................24

(b)     Strong Inference of Scienter .......................................................26

2.      Plaintiffs' allegations fail to show loss causation as required by the PSLRA. ...................................................................................27

B.      Plaintiffs have Failed to Plead their Claims with Particularity as Required by Rule 9(b). ...................................................................................29

V.    PLAINTIFFS FAIL TO ESTABLISH THAT ANY OF THE FUNDS' PUBLIC FILINGS CONTAINED ACTIONABLE MISREPRESENTATIONS OR OMISSIONS ...................................................................................................30

    A.    The Funds' Offering Documents Disclosed the Risk Associated with an Investment in the Funds. ......................................................................................31

    B.    The Funds Disclosed Their Concentration in ABS and MBS. .............................32

    C.    Plaintiffs Have Failed to Plead Any Actionable Misrepresentations or Omissions With Respect to Valuation. ...................................................................34

    D.    Plaintiffs Fail to Allege Facts that Would Establish that the Funds' Choice of a Benchmark Index Supports a Claim under the Securities Laws....................34

VI.    PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT TO DEMONSTRATE THAT ANY OF THE DEFENDANTS ARE CONTROL PERSONS UNDER SECTIONS 15 OR 20(A) .........................................................................................................35

CONCLUSION.......................................................................................................................37

CERTIFICATE OF SERVICE ...............................................................................................39

# TABLE OF AUTHORITIES

**Cases**

*American Pipe & Constr. Co. v. Utah*,
　414 U.S. 538 (1974)............................................................................... 13

*Appleton Elec. Co. v. Graves Truck Line. Inc.*,
　635 F.2d 603 (7th Cir. 1980) ................................................................. 15

*Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton*,
　597 F.3d 330 (5th Cir. 2010) ................................................................. 28

*Argiropoulos v. Kopp*,
　2007 U.S. Dist. LEXIS 22351 (D. Md. Mar. 26, 2007)........................... 21

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)........................................................................ 6, 26

*Azzolini v. CorTS Trust II*,
　2005 U.S. Dist. LEXIS 31853 (E.D. Tenn. Sept. 16, 2005) ............... 36, 37

*Azzolini v. CorTS Trust II for Provident Fin. Trust I*,
　2005 U.S. Dist. LEXIS 38454 (E.D. Tenn. Dec. 14, 2005)...................... 29

*Bayberry Assocs. v. Jones*,
　783 S.W.2d 553 (Tenn. 1990)................................................................ 20

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)............................................................................... 6

*Bokat v. Getty Oil Co.*,
　262 A.2d 246 (Del. 1970) ...................................................................... 21

*Bozeman v. Lucent Techs., Inc.*,
　378 F. Supp. 2d 1348 (M.D. Ala. 2005) ................................................. 15

*Bright v. Spaghetti Warehouse, Inc.*,
　1998 Tenn. App. LEXIS 286 (Tenn. Ct. App. Apr. 29, 1998) ........... 17, 18

*Calaway ex rel. Calaway v. Schucker*,
　193 S.W.3d 509 (Tenn. 2005)................................................................. 7

*Cantrell v. Burnett & Henderson Co.*,
　216 S.W.2d 307 (Tenn. Ct. App. 1948) ................................................. 18

*Casden v. Burns*,
　306 F. App'x 966 (6th Cir. 2009) .......................................................... 21

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994)......................................................................................... 37

*Central Transport, Inc. v. Four Phase Systems, Inc.*,
    936 F.2d 256 (6th Cir. 1991) .......................................................................... 17

*Coffey v. Foamex L.P.*,
    2 F.3d 157 (6th Cir. 1993) .............................................................................. 29

*Coleman v. Indymac Venture, LLC*,
    2013 U.S. Dist. LEXIS 118622 (W.D. Tenn. June 12, 2013).......................... 19

*Cowin v. Bresler*,
    741 F.2d 410 (D.C. Cir. 1984) ........................................................................ 21

*Creech v. Addington*,
    281 S.W.3d 363 (Tenn. 2009)......................................................................... 20

*D.E. & J. Ltd. P'ship v. Conaway*,
    133 F. App'x 994 (6th Cir. 2005) ................................................................... 28

*D.E. & J. Ltd. P'ship v. Conaway*,
    284 F. Supp. 2d 719 (E.D. Mich. 2003),.......................................................... 3

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005).................................................................................. 27, 28

*Engelhardt v. Bell & Howell Co.*,
    327 F.2d 30 (8th Cir. 1964) ............................................................................ 19

*Ex Parte Morgan Asset Management, Inc.*,
    86 So. 3d 309 (Ala. 2011) .............................................................................. 22

*Ex parte Regions Financial Corp.*,
    67 So. 3d 45 (Ala. 2010)................................................................................. 22

*Farber v. Goldman Sachs Group, Inc.*,
    2011 U.S. Dist. LEXIS 16673 (S.D.N.Y. Feb. 16, 2011).............................. 16

*Fed. Hous. Fin. Agency v. UBS Ams. Inc.*,
    712 F.3d 136 (2d Cir. 2013).............................................................................. 8

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.*,
    770 F. Supp. 2d 618 (S.D.N.Y. 2011)............................................................ 14

*Frank v. Dana Corp.*,
    649 F. Supp. 2d 729 (N.D. Ohio 2009)........................................................... 37

*Harvey v. Allstate Ins. Co.*,
   2004 U.S. Dist. LEXIS 27213 (W.D. Tenn. Aug. 23, 2004) ................................................. 8

*Hensley Mfg., Inc. v. ProPride, Inc.*,
   579 F.3d 603 (6th Cir. 2009) ................................................................................................. 6

*Hoffman v. Comshare, Inc. (In re Comshare, Inc. Sec. Litig.)*,
   183 F.3d 542 (6th Cir. 1999) ............................................................................................... 24

*Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*,
   159 F.3d 723 (2d Cir. 1998) ................................................................................................ 35

*In re Am. Funds Fees Litigs.*,
   2005 U.S. Dist. LEXIS 41884 (C.D. Cal. Dec. 16, 2005) ................................................... 22

*In re Bridgestone Sec. Litig.*,
   430 F. Supp. 2d 728 (M.D. Tenn. 2006) ............................................................................... 3

*In re Citigroup ARS Litig.*,
   700 F. Supp. 2d 294 (S.D.N.Y. 2009) ................................................................................. 27

*In re Connetics Corp. Sec. Litig.*,
   542 F. Supp. 2d 996 (N.D. Cal. 2008) ................................................................................... 7

*In re Estate of Davis*,
   308 S.W.3d 832 (Tenn. 2010) ................................................................................................ 7

*In re First Marblehead Corp. Sec. Litig.*,
   639 F. Supp. 2d 145 (D. Mass. 2009) .................................................................................. 28

*In re Goldman Sachs Mut. Funds Fee Litig.*,
   2006 U.S. Dist. LEXIS 1542 (S.D.N.Y. Jan. 17, 2006) ...................................................... 21

*In re Huntington Bancshares Inc. Sec. Litig.*,
   674 F. Supp. 2d 951 (S.D. Ohio 2009) ................................................................................ 35

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   218 F.R.D. 76 (S.D.N.Y. 2003) ...................................................................................... 6, 29

*In re MRU Holdings Sec. Litig.*,
   769 F. Supp. 2d 500 (S.D.N.Y. 2011) ................................................................................. 27

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ............................................................................................... 28

*In re Regions Morgan Keegan Secs*,
   743 F. Supp. 2d 744 (W.D. Tenn. 2010) ............................................................. 23, 24, 30, 33

*In re SCB Computer Tech., Inc. Sec. Litig.*,
  149 F. Supp. 2d 334 (W.D. Tenn. 2001)................................................................. 23

*In re Societe Generale Sec. Litig.*,
  2010 U.S. Dist. LEXIS 107719 (S.D.N.Y. Sept. 29, 2010)...................................... 27

*Ind. State Dist. Council of Laborers v. Omnicare, Inc.*,
  583 F.3d 935 (6th Cir. 2009) ................................................................................... 23

*Johnson v. SunTrust Mortg., Inc.*,
  2011 U.S. Dist. LEXIS 20954 (W.D. Tenn. Mar. 2, 2011) ..................................... 17

*Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*,
  2005 U.S. Dist. LEXIS 26837 (D. Md. Nov. 3, 2005) ............................................ 21

*Jones v. Methodist Healthcare*,
  83 S.W.3d 739 (Tenn. Ct. App. 2001) ..................................................................... 10

*Kalnit v. Eichler*,
  85 F. Supp. 2d 232 (S.D.N.Y. 1999)........................................................................ 36

*Keszthelyi v. U.S.*,
  2011 U.S. Dist. LEXIS 52987 (E.D. Tenn. May 16, 2011)..................................... 18

*Konkol v. Diebold, Inc.*,
  590 F.3d 390 (6th Cir. 2009) ................................................................................... 24

*La Pietra v. RREEF Am., LLC*,
  738 F. Supp. 2d 432 (S.D.N.Y. 2010)......................................................... 25, 31, 33

*La. Sch. Emples. Ret. Sys. v. Ernst & Young, LLP*,
  622 F.3d 471 (6th Cir. 2010) ................................................................................... 24

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
  501 U.S. 350 (1991).................................................................................................. 14

*Lemmer v. Nu-Kote Holding, Inc.*,
  2001 U.S. Dist. LEXIS 13978 (N.D. Tex. Sept. 6, 2001)........................................ 36

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)..................................................................................... 28

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976)....................................................................................... 7

*Local 295/Local 851 IBT Emplr. Group Pension Trust & Welfare Fund v. Fifth Third Bancorp*,
  731 F. Supp. 2d 689 (S.D. Ohio 2010) ..............................................................24, 25

*Lormand v. U.S. Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ........................................................ 29

*Mackey v. Judy's Foods, Inc.*,
   867 F.2d 325 (6th Cir. 1989) ........................................................ 12

*Marino v. Writers Guild of Am. East Inc.*,
   992 F.2d 1480 (9th Cir. 1993) ...................................................... 17

*McCroskey v. Bryant Air Conditioning Co.*,
   524 S.W.2d 487 (Tenn. 1975) ....................................................... 12

*McKennon v. Patel*,
   2011 U.S. Dist. LEXIS 25740 (E.D. Tenn. Mar. 14, 2011) .................... 18

*McLaughlin v. Chase Home Fin. LLC*,
   519 Fed. Appx. 904 (6th Cir. 2013) .............................................. 30

*Melder v. Morris*,
   27 F.3d 1097 (5th Cir. 1994) ........................................................ 23

*Merck & Co. v. Reynolds*,
   559 U.S. 633 (2010) ............................................................... 9, 11

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
   98 F.3d 2 (2d Cir. 1996) .............................................................. 35

*P. Stolz Family P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004) ............................................................. 8

*Paskowitz v. Pac. Capital Bancorp*,
   2009 U.S. Dist. LEXIS 122365 (C.D. Cal. Nov. 6, 2009) ..................... 33

*Phillips v. General Motors Corp.*,
   669 S.W.2d 665 (Tenn. Ct. App. 1984) ......................................... 18

*Pike v. Freeman*,
   266 F.3d 78 (2d Cir. 2001) ........................................................... 18

*Police & Fire Ret. Sys. v. Indymac MBS, Inc.*,
   721 F.3d 95 (2d Cir. 2013) ........................................................... 14

*P.R. Diamonds, Inc. v. Chandler*,
   364 F.3d 671 (6th Cir. 2004) .............................................. 24, 36, 37

*Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*,
   485 F.3d 840 (6th Cir. 2007) ........................................................ 23

*Rowe v. Marietta Corp.*,
    955 F. Supp. 836 (W.D. Tenn. 1997) .................................................................... 8, 11

*Rubke v. Capital Bancorp Ltd.*,
    460 F. Supp. 2d 1124 (N.D. Cal. 2006) ...................................................................... 23

*Ruskay v. Jensen*,
    342 F. Supp. 264 (S.D.N.Y. 1972) ............................................................................. 19

*Ryan v. Morgan Asset Mgmt., Inc.*,
    No. 2:08-cv-02162-SHM-dkv (W.D. Tenn. Dec. 15, 2009) ........................................ 6

*Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*,
    973 F.2d 474 (6th Cir. 1992) ...................................................................................... 17

*Saylor v. Lindsley*,
    391 F.2d 965 (2d Cir. 1968) ........................................................................................ 19

*Simmons v. Countrywide Home Loans*,
    2013 U.S. Dist. LEXIS 109564 (M.D. Tenn. July 23, 2013) ...................................... 17

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008) ..................................................................................................... 23

*Strougo v. Bassini*,
    282 F.3d 162 (2d Cir. 2002) ........................................................................................ 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (U.S. 2007) ................................................................................ 3, 23, 26, 27

*Tosti v. City of Los Angeles*,
    754 F.2d 1485 (9th Cir. 1985) .................................................................................... 15

*Trinity Indus. v. McKinnon Bridge Co.*,
    77 S.W.3d 159 (Tenn. Ct. App. 2001) ........................................................................ 18

*Vertrue v. Vertrue, Inc. (In re Vertrue Mktg. & Sales Practices Litig.)*,
    719 F.3d 474 (6th Cir. 2013) ...................................................................................... 13

*Waterford Twp. Gen. Emples. Ret. Sys. v. SunTrust Banks, Inc.*,
    2010 U.S. Dist. LEXIS 85755 (N.D. Ga. Aug. 19, 2010) .......................................... 28

*Weston v. AmeriBank*,
    265 F.3d 366 (6th Cir. 2001) ...................................................................................... 16

*Williamson v. Columbia Gas & Electric Corp.*,
    186 F.2d 464 (3rd Cir. 1950) ...................................................................................... 19

*Wood v. Combustion Eng'g, Inc.*,
   643 F.2d 339 (5th Cir. 1981) ................................................................ 15

*Woodward v. Raymond James Fin., Inc.*,
   732 F. Supp. 2d 425 (S.D.N.Y. 2010) .................................................. 27

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
   413 F.3d 553 (6th Cir. 2005) ......................................................... 13, 14

**Statutes**

9 U.S.C. § 10 ......................................................................................... 16

15 U.S.C. § 77k ..................................................................................... 29

15 U.S.C. § 78u-4 ............................................................................ 23, 29

15 U.S.C. § 80a-13 ................................................................................ 32

15 U.S.C. § 77l ...................................................................................... 29

15 U.S.C. § 77m ................................................................................. 8, 11

28 U.S.C. § 1658 ................................................................................ 9, 11

Miss. Code Ann. § 75-71-509 ............................................................ 9, 12

Tenn. Code Ann. § 47-18-110 ........................................................... 9, 12

Tenn. Code Ann. § 48-1-122 ............................................................. 9, 12

**Rules**

Fed. R. Civ. P. 9 .............................................................................. passim

Fed. R. Civ. P. 12 ................................................................................... 7

**Regulations**

17 C.F.R. § 230.405 ............................................................................... 37

## INDEX OF EXHIBITS AND ABBREVIATIONS

| Exhibit | Exhibit Title | Abbreviation |
|---------|---------------|--------------|
| A | RMK High Income Fund, Inc. Prospectus (June 24, 2003) | RMH Prosp. |
| B | RMK High Income Fund, Inc. Statement of Additional Information (June 24, 2003) | RMH SAI |
| C | RMK Strategic Income Fund, Inc. Prospectus (March 18, 2004) | RSF Prosp. |
| D | RMK Strategic Income Fund, Inc. Statement of Additional Information (March 18, 2004) | RSF SAI |
| E | RMK Advantage Income Fund, Inc. Prospectus (Nov. 8, 2004) | RMA Prosp. |
| F | RMK Advantage Income Fund, Inc. Statement of Additional Information (Nov. 8, 2004) | RMH SAI |
| G | RMK Multi-Sector High Income Fund, Inc. Prospectus (Jan. 19, 2006) | RHY Prosp. |
| H | RMK Multi-Sector High Income Fund, Inc. Statement of Additional Information (Jan. 19, 2006) | RHY SAI |
| I | Annual Report for RMA, RMH, and RSF Funds (March 31, 2005) | 2005 Ann. Rpt. |
| J | Annual Report for RMA, RMH,RHY, and RSF Funds (March 31, 2006) | 2006 Ann. Rpt. |
| K | Semi-Annual Report for RMA, RMH, RHY, and RSF Funds (Sept. 30, 2006) | 2006 Semi-Ann. Rpt. |
| L | Annual Report for RMA, RMH, RHY, and RSF Funds (March 31, 2007) | 2007 Ann. Rpt. |
| M | Appendix of Relevant Disclosures | Appx. of Disclosures |
| N | FINRA Arbitration Award (Feb. 23, 2012) | Arb. Award |
| O | FINRA Arbitration Statement of Claim (June 1, 2010) | Stmt. of Claim |
| P | FINRA Rule 12204 (Class Action Claims) | FINRA Rule 12204 |

Defendants Regions Financial Corporation ("Regions"), MK Holding, Inc. ("MK Holding"), Morgan Asset Management, Inc. ("MAM"), James C. Kelsoe, Jr. ("Kelsoe"), Brian B. Sullivan ("Sullivan"), Joseph Thompson Weller ("Weller"), Allen B. Morgan ("Morgan"), and J. Kenneth Alderman ("Alderman") (collectively "Defendants") respectfully submit this memorandum in support of their Motion to Dismiss Plaintiffs' Complaint.

## PRELIMINARY STATEMENT

This is Plaintiffs' second bite at the apple after filing and losing an arbitration raising the exact same issues. Plaintiffs seek to recover losses stemming from investments in four closed-end investment funds – the RMK High Income Fund, Inc. ("High Income Fund" or "RMH"), the RMK Strategic Income Fund, Inc. ("Strategic Fund" or "RSF"), the RMK Advantage Fund, Inc. ("Advantage Fund" or "RMA"), and the RMK Multi-Sector High Income Fund, Inc. ("Multi-Sector Fund" or "RHY") (collectively the "Funds"). Plaintiffs assert eight claims[1] – each of which fails as a matter of law.

There are at least six grounds to dismiss Plaintiffs' claims in whole or in part.

- First, Plaintiffs' claims are time-barred by the applicable statutes of limitations and statutes of repose because Plaintiffs failed to timely assert their claims and no basis exists to toll the limitations and repose periods.

- Second, Plaintiffs' claims are barred by the preclusionary doctrine of res judicata as Plaintiffs have previously litigated these exact claims to recover these same losses in an arbitration they filed in 2010 before the Financial Industry Regulatory Authority ("FINRA"); thus, Plaintiffs are now barred from relitigating the same claims and

---

[1] Counts I-III are for claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("1933 Act"), regarding purported misrepresentations and omissions contained in the Multi-Sector Fund's Offering Documents. Counts IV and V purport to allege claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act"), relating to the annual, semiannual, and quarterly reports filed by all four Funds. Counts VI-VIII assert claims under the Tennessee Consumer Protection Act, Tennessee Securities Act, and Mississippi Securities Act, respectively.

issues that have already been decided to final judgment by the FINRA arbitration panel.

- Third, Plaintiffs' claims are textbook derivative claims and are due to be dismissed because they are premised on mismanagement of the Funds and they allege injuries to the Funds themselves, rather than to Plaintiffs personally.

- Fourth, Plaintiffs fail to adequately plead actionable conduct by Defendants and also fail to meet the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rule 9(b) of the Federal Rules of Civil Procedure.

- Fifth, Plaintiffs fail to allege any actionable material misstatements or omissions to support their claims as the Funds' Offering Documents[2] and other public filings plainly refute Plaintiffs' allegations that the Funds and Defendants omitted or misrepresented material information regarding the Funds.

- Finally, Plaintiffs' claims premised on control person liability under Section 15 of the 1933 Act and Section 20(a) of the 1934 Act fail as a matter of law as Plaintiffs have failed to establish a primary violation of the securities laws by *any* Defendant and offer only conclusory allegations to support their claims for control person liability.

## STATEMENT OF FACTS

## I.    THE FUNDS AND PLAINTIFFS' ALLEGATIONS

The Funds had their initial public offerings on June 24, 2003 (RMH); March 18, 2004 (RSF); November 8, 2004 (RMA); and January 19, 2006 (RHY). (Exs. A, C, E, G (RMH, RSF, RMA, & RHY Prosp., Cover Pages).)[3] The Funds' Offering Documents set forth their investment strategy, which was to invest "the majority of [their] total assets in below investment

---

[2] "Offering Documents" refers to the Funds' Registration Statements, including, without limitation, Prospectuses, Statements of Additional Information, and any information incorporated by reference therein.

[3] The Complaint alleges correct IPO dates with respect the High Income and Strategic Funds but is slightly off with respect to the Advantage and Multi-Sector Funds. (Compl., ¶¶ 5-8.)

grade debt securities," which are "commonly referred to as 'junk bonds.'" (*See* Exs. A (RMH Prosp., Cover Page); C (RSF Prosp., Cover Page); E (RMA Prosp., Cover Page); G (RHY Prosp., Cover Page).)[4] Specific types of debt securities in which the Funds could invest included, among others, ABS and MBS. (*See, e.g.*, Exs. A (RMH Prosp., pp. 15-20); B (RMH SAI, pp. 2-26); D (RSF SAI, pp. 2-27); F (RMA SAI, pp. 3-28); H (RHY SAI, pp. 2-37).) Each Fund warned investors of the risks associated with any investment in it, including the risks associated with securities in which the Funds would invest. Specifically, each Fund disclosed, *on the cover page* of its prospectus, that "**[t]he Fund's strategy of investing the majority of its total assets in below investment grade debt securities and its expected use of leverage involve a high degree of risk. Stockholders could lose some or all of their investment.**" (Ex. E (RMA Prosp., Cover Page); *see also* Exs. A, C, G, (RMH, RSF, & RHY Prosp., Cover Pages) (same).)[5] Each Fund's Prospectus then reemphasized that: "Because the Fund expects to invest a majority of its assets in below investment grade debt securities, *investment in the Fund's common shares involves a high degree of risk. . . . Due to uncertainty in all investments, there can be no assurance that the Fund will achieve its investment objectives.*" (Ex. G (RHY Prosp., p. 6)

---

[4] When deciding a motion to dismiss, "courts must consider the complaint in its entirety, as well as other . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Such documents include "the full text of securities filings, the company prospectus, analysts' reports, and statements integral to a complaint," as well as documents that are "referred to in the complaint and are central to the plaintiff's claim." *In re Bridgestone Sec. Litig.*, 430 F. Supp. 2d 728, 732 (M.D. Tenn. 2006). Courts may also take notice of market trends and relevant media reports. *See D.E. & J. Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 749 n.26 (E.D. Mich. 2003), *aff'd* 133 F. App'x 994 (6th Cir. 2005).

[5] The Funds also disclosed that "[u]nder adverse market or economic conditions, the secondary market for below investment grade securities could contract . . . and these instruments may become illiquid. . . . Factors having an adverse impact on the market value of below investment grade securities may have an adverse effect on the Fund's net asset value and the market value of its common shares." (*See, e.g.*, Ex. A (RMH Prosp., p. 25).)

(emphasis supplied); *see also* Exs. A (RMH Prosp., p. 5); E (RMA Prosp., p. 5); C (RSF Prosp., pp. 5-6).)

In mid-2007, the well-documented financial crisis caused the market for debt securities, such as the ABS and MBS in which the Funds invested, to disappear. The downturn caused sharp and immediate reductions in the prices at which such securities could be sold, resulting in a drop in each Fund's NAV, and a sharp decline in the Funds' share prices. The Funds' decline was commensurate with the drop in values of many other global asset classes. And the credit crisis was an event that was unforeseen by virtually everyone.

Despite the unprecedented collapse of certain credit markets and extensive disclosures emphasizing the risk associated with an investment in the Funds, Plaintiffs claim that they were defrauded. Plaintiffs allege that Defendants: (i) concealed risks inherent in the Funds that were in fact disclosed – on the cover pages of the Funds' prospectuses, no less (Compl., ¶ 12); (ii) over-concentrated the Funds' assets in ABS and MBS, thereby violating the Funds' investment guideline prohibiting concentration in a single "industry" (Compl., ¶¶ 13-14); (iii) misclassified certain assets, thereby understating the Funds' holdings of ABS and MBS (*id.* at ¶¶ 15-16); (iv) selected an inappropriate benchmark index against which to compare the Funds' returns (*id.* at ¶¶ 24-26); and (v) failed to exercise adequate due diligence prior to purchasing securities for the Funds (*id.* at ¶¶ 22-23).

## II.    THE DEFENDANTS

During the period in question, MAM was the investment adviser the Funds used to select and manage the Funds' investments, subject to the supervision of the Funds' respective Boards (*see, e.g.*, Ex. E (RMA Prosp., p. 31), pursuant to an Investment Advisory Agreement. (Compl., p. i n.1, ¶¶ 5, 50.) MAM employee James Kelsoe served as the Funds' portfolio manager. (*Id.* at

¶ 5.) MAM is a wholly owned subsidiary of MK Holding. (*Id.* at ¶ 1.) MK Holding, MAM, and Morgan Keegan & Company, Inc. ("Morgan Keegan") are subsidiaries of Regions, a publicly held bank holding company. (*Id.* at ¶¶ 48-50.) Other Defendants include certain officers and directors of the various corporate entities named in this action, including officers and directors of the Funds, MAM and/or Regions. The RMK Funds are each Maryland corporations. (*See, e.g.*, Ex. C (RSF Prosp., p. 14).)

MAM served as the Funds' investment adviser until July 29, 2008, when the management of the Funds was transferred to Hyperion Brookfield Asset Management, Inc. ("Hyperion), an entity with absolutely no relationship legal or otherwise to any Defendant. (Compl., p. 1, n.1.)

## III.   THE ARBITRATION

On or about June 1, 2010, Plaintiffs filed a Statement of Claim with FINRA against Morgan Keegan arising from Plaintiffs' investments in the RMK Funds. *See* Ex. O (Stmt. of Claim). Plaintiffs asserted a number of causes of action virtually identical to those filed herein, including violations of Sections 11, 12(a)(2), and 15 of the 1933 Act (Ex. O (Stmt. of Claim, pp. 91-93), violations of Section 10(b) of the 1934 Act (*id.* at p. 90), violations of SEC Rule 10b-5 (*id.*), and violations of the Tennessee Securities Act, Tennessee Consumer Protection Act, and Mississippi Securities Act (*id.* at pp. 93-94). Plaintiffs' Statement of Claim was based on alleged misstatements and omissions relating to the Funds' true nature and risks, the Funds' violations of stated investment limitations, and the use of an inappropriate benchmark by the Funds, among others. (*See id.*, at pp. 6, 8, 57.) Plaintiffs alleged compensatory damages of $2,674,702.00. (*Id.* at p. 95.) Following a five-day hearing on the merits, a three-member arbitration panel denied Plaintiffs' claims in their entirety. (*See* Ex. N (Arb. Award).)

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the well-pleaded factual allegations in a complaint must be construed in favor of the plaintiffs, the court need not accept as true legal conclusions or unwarranted factual inferences. *See id.* at 1949. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. A complaint has "facial plausibility" when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. The inference of a "mere possibility of misconduct" is insufficient. *Id.* at 1950; *see also Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). The complaint must include more than "labels and conclusions," and must plead facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Moreover, Plaintiffs may not satisfy their pleading burden by repeating mere allegations made in other proceedings.[6] Allegations in regulatory proceedings are nothing more than allegations; they are not facts, have not been tested by any court, are immaterial, and cannot, as a matter of law, salvage an otherwise deficient Complaint. *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003); *see also Ryan v. Morgan Asset Mgmt.*,

---

[6] *See, e.g.*, Compl., ¶¶ 337-341 (repeating and adopting allegations in the Multi-State Task Force Joint Notice to Revoke Registration and Impose Administrative Penalty); *id.* at ¶ 342 (repeating allegations in the SEC Consent Order); *id.* at ¶ 20 (repeating SEC's allegations regarding valuation); *id.* at ¶¶ 112, 135, 137, 139-141, 148, (prefacing allegations with "[a]ccording to the SEC" or "as alleged by the SEC"); *id.* at ¶¶ 151-163 (relying on SEC report in section entitled "SEC Report Documents Fraud Committed by Defendants in Fund NAV's"); *id.* at ¶¶ 231-232 (repeating allegations contained in the SEC's Cease and Desist Order); *id.* at ¶¶ 233-247 (same); *id.* at ¶ 249 (repeating allegation of the Multi-State Task Force); *id.* at ¶ 250 (repeating allegations of the FINRA Complaint); *id.* at ¶¶ 251-253 (repeating allegations of the SEC Enforcement Action).

*Inc., et al.*, No. 2:08-cv-02162-SHM-dkv (W.D. Tenn. Dec. 15, 2009), Order at 2 (Docket Entry

No. 58) ("This Court has no duty to examine a separate complaint filed [in another case] and

determine exactly what additional claims for relief Plaintiff intends to plead in this case."

(internal quotations and citations omitted)); *Lipsky v. Commonwealth United Corp.*, 551 F.2d

887, 893 (2d Cir. 1976) (holding that references to a complaint filed by the SEC was improper,

and that "neither a complaint nor references to a complaint which results in a consent judgment

may properly be cited in the pleadings under the facts of this case").[7] Plaintiffs' Complaint must

rise and fall on its own merit, irrespective of generalized allegations made in other proceedings.

## ARGUMENT

## I.     PLAINTIFFS' CLAIMS ARE TIME-BARRED

Plaintiffs assert a number of causes of action in this case, each of which has an applicable

statute of limitations and an applicable statute of repose that must be enforced.

### A.     The Applicable Statutes of Repose Bar Plaintiffs' Claims

Statutes of repose "impose 'an absolute time limit within which actions must be

brought.'" *In re Estate of Davis*, 308 S.W.3d 832, 838 (Tenn. 2010) (quoting *Calaway ex rel.*

*Calaway v. Schucker*, 193 S.W.3d 509, 515 (Tenn. 2005)). "Unlike the time for filing under a

statute of limitations, which begins when a claim accrues, the period for a statute of repose

begins when a specific event occurs, regardless of whether a cause of action has accrued or

whether any injury has resulted." *Id.* (quotations omitted).[8] "Essentially, a statute of repose

---

[7] To the extent the Court does not grant the instant motion to dismiss, the Court should strike
Plaintiffs' improper references to unproven allegations of regulators. Fed. R. Civ. P. 12(f); *see
also In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) (striking
portions of plaintiff's paragraph relying on SEC complaint as factual support for plaintiff's
allegations).

[8] While statutes of repose and statutes of limitations are frequently bundled, they are distinct
from each other and serve different functions. As one court explained:

terminates liability by limiting the time during which a cause of action may accrue." *Harvey v. Allstate Ins. Co.*, No. 03-2721-M1V, 2004 U.S. Dist. LEXIS 27213, at *12 (W.D. Tenn. Aug. 23, 2004).

       1.    <u>The 1933 Act's three year statute of repose bars Plaintiffs' claims.</u>

Pursuant to the Securities Act of 1933, no action can be brought "to enforce a liability created under section 11 . . . more than three years after the security was bona fide offered to the public, or under section 12(a)(2) more than three years after the sale." 15 U.S.C. § 77m. As Section 15 relates directly to Sections 11 and 12, it is also controlled by a three-year statute of repose. *See Rowe v. Marietta Corp.*, 955 F. Supp. 836, 839 (W.D. Tenn. 1997).

It is undisputed that the Multi-Sector Fund – which is the only Fund at issue under Plaintiffs' 1933 Act claims – was "bona fide offered to the public" in January 2006. (*See* Compl., ¶ 8). Thus, the three-year statute of repose on Plaintiffs' Section 11 claim began to run in January 2006. Plaintiffs' Section 12(a)(2) claim began to run when the Multi-Sector Fund was sold to Plaintiffs, which was also January 2006. (*Id.* at ¶ 441.) Thus, the three-year statute of repose for Plaintiffs' 1933 Securities Act claims expired in January 2009 – more than four years before the filing of Plaintiffs' Complaint, and Plaintiffs' claims are time-barred.

---

Statutes of limitations limit the availability of remedies and, accordingly, may be subject to equitable considerations, such as tolling, or a discovery rule. In contrast, statutes of repose affect the underlying right, not just the remedy, and thus they "run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action."

*Fed. Hous. Fin. Agency v. UBS Ams. Inc.*, 712 F.3d 136, 140 (2d Cir. 2013) (quoting *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102-103 (2d Cir. 2004)).

2.      <u>Sections 10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5 are governed by a five year statute of repose that bars Plaintiffs' claims.</u>

Section 10(b), Section 20(a), and Rule 10b-5 claims "may be brought not later than . . . 5 years after [the] violation." 28 U.S.C. § 1658(b); *see also Merck & Co. v. Reynolds*, 559 U.S. 633 (2010). Plaintiffs' allegations make clear that all of the alleged violations took place well before July 29, 2008 when Hyperion – an entity with absolutely no relationship, legal or otherwise, to Defendants – took over management of the Funds, after which point in time Defendants could not have committed any violation of the 1934 Act. (Compl., p. 1 n.1.) Therefore, the five-year statute of repose at a minimum bars any claims filed after July 29, 2013. Accordingly, Plaintiffs' 1934 Act claims – for each of the Funds at issue – are time-barred as their Complaint was not filed until August 22, 2013.

3.      <u>The five-year statute of repose bars Plaintiffs' claims under the Tennessee and Mississippi Securities Acts.</u>

Pursuant to the Tennessee Securities Act, "[n]o action shall be maintained under this section unless commenced before the expiration of five (5) years after the act or transaction constituting the violation." Tenn. Code Ann. § 48-1-122(h). Under the Mississippi Securities Act, "[a] person may not obtain relief . . . unless the action is instituted within . . . five (5) years after the violation." Miss. Code Ann. § 75-71-509(j)(2). Like Plaintiffs' 1934 Act claims discussed above, Plaintiffs' state securities claims are time-barred as the alleged violations giving rise to Plaintiffs' claims occurred more than five years prior to the filing of the Complaint.

4.      <u>Plaintiffs' Tennessee Consumer Protection Act claim is barred by the five-year statute of repose.</u>

The Tennessee Consumer Protection Act ("TCPA") provides that "in no event shall an action under § 47-18-109 be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief." Tenn. Code Ann. § 47-18-110. Plaintiffs' claim

arises from their purchase of the Funds, the last of which according to Plaintiffs' Complaint was on November 17, 2007. (Compl., ¶ 441.) Therefore, the statute of repose ran on Plaintiffs' TCPA claim on November 17, 2012. As Plaintiffs' Complaint was not filed until August 22, 2013, Plaintiffs' TCPA claim is barred by the five-year statute of repose.

### B.        The Applicable Statutes of Limitations Bar Plaintiffs' Claims.

"A statute of limitations governs the time within which suit may be brought once a cause of action accrue[s]." *Jones v. Methodist Healthcare*, 83 S.W.3d 739, 743 (Tenn. Ct. App. 2001). With respect to accrual, the Complaint makes a litany of allegations as to when Plaintiffs discovered and/or could have discovered the facts underlying their claims. (*See, e.g.*, Compl., ¶ 412 (alleging December 21, 2007 as earliest date of discovery for claims under Sections 11, 12(a)(2), and 15); ¶¶ 413-414 (alleging April 4, 2008 as earliest date of discovery for Section 10(b), Section 20(a), and Rule 10b-5 claims); ¶ 426 (alleging July 11, 2008 as earliest date of discovery for Sections 10(b) and 20(a) claims on their RHY purchases).) The latest date upon which Plaintiffs' own Complaint asserts Plaintiffs discovered facts relevant to their claims is April 7, 2010 when the SEC and Multi-State Task Force issued their respective Notice of Intent and enforcement actions. (*Id.* at ¶ 415.) While Defendants could successfully argue that Plaintiffs were on notice of their claims well before April 2010 – even accepting this latest possible date of discovery offered by Plaintiffs – each and every one of their claims is time-barred as outlined in detail below.[9]

---

[9] Plaintiffs' Complaint contains affirmative statements regarding when they discovered the facts giving rise to their claims. (*See, e.g.*, Compl., ¶¶ 412-415, 426.) These allegations have been accepted as true for purposes of Defendants' statute of limitations argument; therefore, no further factual development is needed and this issue is ripe for consideration.

1.    Sections 11, 12(a)(2), and 15 of the 1933 Act are governed by a one-year limitations period that bars Plaintiffs' claims.

Pursuant to the Securities Act of 1933, "[n]o action shall be maintained to enforce any liability created under section 11 or section 12(a)(2) unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. As Section 15 relates directly to Sections 11 and 12, it is also controlled by a one-year, inquiry notice statute of limitations. *See Rowe v. Marietta Corp.*, 955 F. Supp. 836, 839 (W.D. Tenn. 1997).

**By Plaintiffs' own admission, they were on notice of any and all facts giving rise to their claims no later than April 7, 2010**. (*See* Compl., ¶ 415 ("Plaintiffs would have been unable to discover, nor would any investor exercising reasonable diligence in their positions, . . . the facts underlying Plaintiffs claims contained in the Multi-State Notice of Intent and the SEC v. Morgan Keegan enforcement actions (and exhibits and allegations contained therein) published on April 7, 2010.") .) Accordingly, Plaintiffs' claims under the 1933 Act expired under the one-year statute of limitations on April 7, 2011 – well before the filing of Plaintiffs' Complaint. As a result, Plaintiffs' claims are time-barred.

2.    Sections 10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5 are governed by a two-year limitations period that bars Plaintiffs' claims.

A private securities fraud complaint under Sections 10(b), 20(a), and Rule 10b-5 "may be brought not later than . . . 2 years after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b); *see also Merck & Co. v. Reynolds*, 559 U.S. 633 (U.S. 2010). This limitations period "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation' – whichever comes first." *Merck*, 559 U.S. at 653. Again, using Plaintiffs' latest alleged date of discovery of April 7, 2010, the two-year

statute of limitations on Plaintiffs' Sections 10(b), 20(a), and Rule 10b-5 claims would have run on April 7, 2012 – well before the filing of Plaintiffs' Complaint. Accordingly, Plaintiffs' 1934 Act claims are time-barred.

        3.      <u>The two-year limitations period bars Plaintiffs' claim under the Tennessee and Mississippi Securities Acts.</u>

Pursuant to the Tennessee Securities Act, "[n]o action shall be maintained under this section unless commenced before . . . the expiration of two (2) years after the discovery of the facts constituting the violation, or after such discovery should have been made by the exercise of reasonable diligence." Tenn. Code Ann. § 48-1-122(h). Under the Mississippi Securities Act, "[a] person may not obtain relief . . . unless the action is instituted within . . . two (2) years after discovery of the facts constituting the violation." Miss. Code Ann. § 75-71-509(j)(2). Like Plaintiffs' 1934 Act claims, which are also subject to a two-year statute of limitations, Plaintiffs' state securities claims are time-barred as the two-year limitations period expired on April 7, 2012 and Plaintiffs' Complaint was not filed until August 22, 2013.

        4.      <u>Plaintiffs' Tennessee Consumer Protection Act claim is barred by its one-year limitations period.</u>

The TCPA provides that "[a]ny action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice." Tenn. Code Ann. § 47-18-110. Tennessee courts have made clear that "discovery" takes place "when the plaintiffs discover their injury or 'through the exercise of reasonable care and diligence [it] should have been discovered.'" *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989) (quoting *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487, 491 (Tenn. 1975)). Plaintiffs' own Complaint identifies the latest alleged date of discovery as April 7, 2010, as such,

Plaintiffs' TCPA claim is time-barred as the one-year statute of limitations would have expired on April 7, 2011 – well before the filing of Plaintiffs' Complaint in 2013.

> **C.**     **Tolling Does Not Save Plaintiffs' Claims.**

Plaintiffs rely on *American Pipe* to toll the running of the statutes of limitations on their claims. In *American Pipe*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) (footnote omitted). *American Pipe*, however, does not save Plaintiffs' claims because: (1) Plaintiffs filed their arbitration action before the class certification decision, so *American Pipe* does not apply; (2) *American Pipe* does not toll the running of statutes of repose; (3) any applicable tolling under *American Pipe* would have ceased with the filing of Plaintiffs' opt-out in the arbitration proceeding on June 1, 2010; and (4) equitable tolling does not apply to Plaintiffs' state-law claims that were not asserted in the federal class actions.

> 1.     <u>*American Pipe* does not apply where an independent action is filed before determination of the class certification issue.</u>

"[A] plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the *American Pipe* tolling doctrine" *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 568 (6th Cir. 2005).[10] According to the Sixth Circuit, "'[t]he purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided.'" *Vertrue v. Vertrue, Inc. (In re Vertrue*

---

[10] The Sixth Circuit has reaffirmed its position as recently as this year. *See, e.g.*, *Vertrue v. Vertrue, Inc. (In re Vertrue Mktg. & Sales Practices Litig.)*, 719 F.3d 474, 480 (6th Cir. 2013).

*Mktg. & Sales Practices Litig.)*, 719 F.3d 474, 480 (6th Cir. 2013) (quoting *Wyser-Pratte*, 413 F.3d at 569). Based on the foregoing, Plaintiffs are not entitled to *American Pipe* tolling because they filed their action prior to the certification decision.

Specifically, Plaintiffs filed their FINRA arbitration Statement of Claim in June 2010 – well before the consolidated class action was certified on August 6, 2013. (Compl., ¶ 419.) Based on *Wyser-Pratte*, Plaintiffs cannot, therefore, rely on *American Pipe*. Thus, even if the limitation periods on Plaintiffs' claim were tolled from December 21, 2007 – which is the earliest class action filing Plaintiffs allege (*see* Compl., ¶ 418) – through the filing of the Statement Claim, they began to run anew in June 2010. As outlined above, Plaintiffs' claims are all subject to one and two year statutes of limitations. Because more than two years elapsed between their filing of the arbitration in June 2010 and their filing of the instant action on August 22, 2013, Plaintiffs' claims are all barred by the applicable statutes of limitations.

2.   *American Pipe* does not toll the running of statutes of repose.

Not only does *American Pipe* tolling not apply because Plaintiffs took themselves out of its protection by filing an independent action, *American Pipe* relates to tolling of statutes of limitations and is not applicable to statutes of repose. In *IndyMac*, the Second Circuit held that *American Pipe* tolling does not apply to the three-year statute of repose governing Section 11 and Section 12 claims because (a) if *American Pipe* tolling is a form of equitable tolling, it is prohibited under the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991) (equitable "tolling principles do not apply to that period"), and (b) if *American Pipe* tolling is a form of legal tolling, its application to the statute of repose is prohibited under the Rules Enabling Act. *Police & Fire Ret. Sys. v. Indymac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013); *see also Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d

618, 624-25 (S.D.N.Y. 2011) (holding that *American Pipe*'s equitable tolling doctrine does not toll the Security Act's three-year statute of repose and dismissing plaintiffs' Section 11 and 12 claims as time-barred).[11]

Plaintiffs' claims are subject to 3 and 5 year statutes of repose. As outlined in detail above, both the three and five-year statutes of repose expired well before the filing of Plaintiffs' Complaint on August 22, 2013, and all of Plaintiffs' claims are therefore subject to dismissal.

3.   Any tolling of the statutes of limitations ceased when Plaintiffs opted-out of the class actions in their arbitration proceeding.

Even if *American Pipe* tolling applies, which as discussed above it does not, Plaintiffs' claims are barred because tolling would have ceased at the time Plaintiffs filed an opt-out as part of their Statement of Claim in June 2010. (*See* Ex. P. (FINRA Rule 12204(b) (requiring FINRA arbitration claimants to opt-out of class action proceedings where the arbitration and class action are "based upon the same facts and law, and involve[] the same defendants" )).)[12] Indeed, "many federal courts have held that 'the statute begins running anew from the date when the class member exercises the right to opt out because before this time, the class member is deemed to be actively prosecuting her rights.'" *Bozeman v. Lucent Techs., Inc.*, 378 F. Supp. 2d 1348 (M.D. Ala. 2005) (quoting *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1488 (9th Cir. 1985) (citing *Appleton Elec. Co. v. Graves Truck Line. Inc.*, 635 F.2d 603, 608-10 (7th Cir. 1980); *Wood v. Combustion Eng'g, Inc.*, 643 F.2d 339 (5th Cir. 1981))).

---

[11] While this Court has previously noted that some courts have applied *American Pipe* to statutes of repose (*see In re Regions Morgan Keegan Closed-End Fund Litigation*, No. 2:07-cv-02830 (March 30, 2012) at pp. 23-24), the Second Circuit's 2013 decision in *Indymac* was published since, and – after an exhaustive analysis of federal case law – refused to apply *American Pipe* tolling principles to statutes of repose.

[12] To opt-out, claimants must file a notice with FINRA that they "will not participate in the class action or in any recovery that may result from the class action" or they may file with FINRA "a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery." (Ex. P (FINRA Rule 12204).)

When filing their Statement of Claim, Plaintiffs specifically opted-out of the pending class actions. (*See* Ex. O (Stmt. of Claim, p. 9).) Therefore, even if *American Pipe* applied – it does not – the statutes of limitations began anew in June 2010. Because more than three years elapsed between the filing of the opt-out on June 1, 2010 and the filing of the instant Complaint on August 22, 2013, Plaintiffs' claims (all with one and two year statutes of limitations) are barred.

        4.     <u>The statute of limitations cannot be tolled for claims that were not asserted in the class actions.</u>

In *Weston v. AmeriBank*, 265 F.3d 366 (6th Cir. 2001), the Sixth Circuit held that statutes of limitations are not tolled for state-law claims that could have been brought, but were not, in the original complaint. *Weston*, 265 F.3d at 368-69. Because Plaintiffs' state-law claims were not asserted in the prior class actions (Compl., ¶ 418), they are not subject to tolling and are barred by the applicable statutes of limitations.

## II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE PRECLUSIONARY DOCTRINE OF RES JUDICATA

Plaintiffs have previously litigated these same claims arising out of their alleged losses on the RMK Funds in a five-day hearing before a FINRA arbitration panel. (*See* Exs. N (Arb. Award); O (Stmt. of Claim).) The award is final.[13] Unsatisfied with the result – but not so much so as to have pursued an appeal, Plaintiffs now seek a second bite at the apple before this Court. The arbitration panel has already found that Plaintiffs' claims lack merit. Plaintiffs cannot now simply file the same claims in a different forum and hope for a better result. *See, e.g.*, *Farber v. Goldman Sachs Group, Inc.*, No. 10 Civ. 873, 2011 U.S. Dist. LEXIS 16673 (S.D.N.Y. Feb. 16, 2011) (dismissing plaintiff's claims pursuant to Rule 12(b)(6) for failure to state a claim as

---

[13] Pursuant to the FAA, Plaintiffs could have sought to vacate the arbitration award upon any of four statutorily prescribed grounds. *See* 9 U.S.C. ¶10(a). Plaintiffs did not.

plaintiff's claims were barred by res judicata because plaintiff had sought to relitigate the same causes of actions set forth in his FINRA arbitration).

Under the doctrine of res judicata, once a final judgment on the merits is rendered, parties and their privies are absolutely barred from relitigating issues that were or could have been raised in the prior action. *Johnson v. SunTrust Mortg., Inc.*, No. 2:10-cv-02936, 2011 U.S. Dist. LEXIS 20954 (W.D. Tenn. Mar. 2, 2011). "Courts apply the doctrine of res judicata to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources." *Id.* at *8 (quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992)). For a prior judgment to bar a subsequent action under the doctrine of res judicata, four elements must be present: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Simmons v. Countrywide Home Loans*, No. 3:11-00476, 2013 U.S. Dist. LEXIS 109564, at *6-7 (M.D. Tenn. July 23, 2013) (citing *Sanders Confectionary Prods.*, 973 F.2d at 484).

### A.   Plaintiffs' Arbitration Proceeding Resulted in a Final Judgment on the Merits.

Res judicata requires a final judgment on the merits for the prior action to have preclusive effect. An arbitration decision satisfies this element. *See Central Transport, Inc. v. Four Phase Systems, Inc.*, 936 F.2d 256, 259 (6th Cir. 1991) ("[F]ederal courts ordinarily give preclusive effect to arbitrations."); *Bright v. Spaghetti Warehouse, Inc.*, No. 03A01-9708-CV-00377, 1998 Tenn. App. LEXIS 286 (Tenn. Ct. App. Apr. 29, 1998). As noted by the Second Circuit, "[a]rbitration is not a trial run in which a party may sit quietly by without raising pertinent issues, wait to see if the result is in his favor and then seek judicial relief as an afterthought. *See Marino*

*v. Writers Guild of Am. East Inc.,* 992 F.2d 1480, 1483-84 (9th Cir. 1993). If that were the case, arbitration would lose its vitality as an alternative to litigation, which is inconsistent with the strong federal policy favoring arbitration, the enforcement of arbitration agreements and the confirmation of arbitration awards." *Pike v. Freeman,* 266 F.3d 78, 89 (2d Cir. 2001) (quoting trial court decision below). Therefore, the award entered in Plaintiffs' FINRA arbitration is a final judgment on the merits and has preclusive effect under the doctrine of res judicata.

> **B.    Privity Exists Between the Parties to this Action and the Parties to the Arbitration for Purposes of Res Judicata.**

"The Tennessee rule holds that privity as used in the context of res judicata . . . does not embrace relationships between persons or entities, but rather to the subject matter of the litigation." *Bright*, 1998 Tenn. App. LEXIS 286, at *8 (quoting *Phillips v. General Motors Corp.*, 669 S.W.2d 665 (Tenn. Ct. App. 1984)). Indeed, when applying the doctrine of res judicata, "privity concerns a shared identity of interests relating to the subject matter of the litigation." *Keszthelyi v. U.S.*, No. 1:05-cv-303, 2011 U.S. Dist. LEXIS 52987, at *39 (E.D. Tenn. May 16, 2011). For example, "a plaintiff who sued an automobile dealer for a defective car and lost could not then sue the manufacturer on an identical claim." *Trinity Indus. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 185 (Tenn. Ct. App. 2001) (citing *Cantrell v. Burnett & Henderson Co.*, 216 S.W.2d 307 (Tenn. Ct. App. 1948)). Thus, "privity is not established by parties being legally connected . . . , but rather whether they can claim the same legal rights asserted to the subject matter." *McKennon v. Patel*, No. 3:10-CV-246, 2011 U.S. Dist. LEXIS 25740, at *10 (E.D. Tenn. Mar. 14, 2011) (quotations omitted).

Here, the subject matter of the instant action and Plaintiffs' FINRA arbitration are identical. Both arise out of Plaintiffs' losses in the RMK Funds and both are based on identical claims of violations of stated investment limitations, inappropriate benchmarks, misrepresented

default rates, and misrepresentations in offering and marketing materials, among others.[14] Thus, the subject matter of the actions is the same and, therefore, "a shared identity of interests" exists between the parties to the arbitration and the parties to the instant action – satisfying the privity element of the res judicata doctrine.

### C.  The Arbitration Decided Issues and Causes of Action that Are the Subject of Plaintiffs' Complaint.

The final elements of res judicata relate to the correlation between the causes of action and issues previously litigated to those being currently asserted. "Where the claims for relief in two lawsuits depend on the same operative facts and pertain to the same disputed transactions, they constitute the same cause of action." *Ruskay v. Jensen*, 342 F. Supp. 264 (S.D.N.Y. 1972) (citing *Saylor v. Lindsley*, 391 F.2d 965, 969 n. 6 (2d Cir. 1968); *Engelhardt v. Bell & Howell Co.*, 327 F.2d 30, 33 (8th Cir. 1964); *Williamson v. Columbia Gas & Electric Corp.*, 186 F.2d 464, 470 (3rd Cir. 1950)). Tennessee has also adopted this standard. *Coleman v. Indymac*

---

[14] *Compare, e.g.*, Compl., ¶ 14 ("The Funds also violated their stated policies by investing more than 25% of their portfolio securities in the mortgage-related securities . . . .") *with* SOC, p. 6 ("The RMK Funds . . . also violated fundamental limits on holdings within a single industry, growing its investments in the mortgage industry to astronomical levels and well in excess of the 25% industry limitation."); Compl., ¶ 4 ("The Funds falsely touted their performance, including a relatively low default rate (1-2%) when, in fact, Funds' portfolio were collapsing in value even when not in default.") *with* SOC, p. 8 (Plaintiffs were misled by "material misleading information about the risks of the fund and fund valuations – including statements that the RMK funds were diversified and that in 2007 they were sustaining only a 1-2% default rate – when in reality the funds' structured products were suffering catastrophic losses regardless of the default rate."); Compl., ¶ 4 ("The Funds were falsely characterized as "high yield bond funds" and likened to investments in corporate bonds and preferred stocks – false statements that were compounded by the use of an inappropriate benchmark index.") *with* SOC, p. 6 (The RMK Funds "are completely different from corporate bonds and have completely different characteristics from bonds – high-yield or otherwise. . . . Morgan Keegan hid this fact by calling itself and comparing itself to a benchmark "high yield bond" index – the Lehman Ba High-Yield Corporate Bond Index."); Compl., ¶ 4 ("The Funds fraudulently overstated the values of portfolio securities, manipulated price quotations . . ., and subsequently reported false Net Asset Values.") *with* SOC, p. 57 ("Morgan Keegan, acting through Weller and Fund Accounting, failed to employ reasonable procedures to price the Funds' portfolio securities and, as a result of that failure, did not calculate accurate NAVs for the RMK Funds.").

*Venture, LLC*, No. 12-2125, 2013 U.S. Dist. LEXIS 118622, at *32 (W.D. Tenn. June 12, 2013) ("Two suits . . . shall be deemed the same 'cause of action' . . . where they arise out of the same transaction or a series of connected transactions." (quoting *Creech v. Addington,* 281 S.W.3d 363, 381 (Tenn. 2009))).

In this case, there can be no credible dispute that the Plaintiffs' arbitration and the present claim arise out of the same transaction, i.e. Plaintiffs' purchases of and losses related to the RMK Funds. Even a cursory review of the Statement of Claim reveals identical facts and allegations to the instant action. *See, e.g.*, *supra* note 14, p. 19.

Based on the foregoing, Plaintiffs' Complaint is due to be dismissed in its entirety based upon the doctrine of res judicata. Indeed, Plaintiffs have already brought these exact same claims, based on the exact same transactions and occurrences before FINRA. Thus, Plaintiffs are precluded from asserting these claims again hoping for a second bite at the apple.

## III.   PLAINTIFFS' CLAIMS ARE DERIVATIVE, BELONG TO THE FUND COMPANIES, AND CANNOT BE BROUGHT ON AN INDIVIDUAL BASIS

In reading the entirety of the Complaint and focusing on the core of Plaintiffs' alleged wrongs, they consistently argue the Funds were mismanaged.[15] Disputes over the management of the RMK Funds, however, constitute alleged breaches of duties owed to the Funds – not to shareholders such as Plaintiffs. Redress of such alleged breaches can be pursued only by the Funds or by shareholders on behalf of the Funds in a properly asserted derivative action. *See, e.g.*, *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 561 (Tenn. 1990) ("Mismanagement which

---

[15] *See, e.g.*, Compl., ¶¶ 4 ("The Funds concentrated between 65-70% of their portfolio securities in . . . ABS."), 4 ("The Funds fraudulently overstated the values of portfolio securities, manipulated price quotations . . ., and subsequently reported false Net Asset Values."), 186 ("A significant number of the structured products held by the Funds were subordinated tranches of various securitizations."), 379 ("[T]he collapse of the Funds was a result of the large positions of concealed mortgage-backed securities products in the Funds . . . .").

depresses the value of stock is a wrong to the corporation; *i.e.*, the stockholders collectively, to be enforced by a derivative action." (quoting *Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del. 1970))); *In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04 civ 2567, 2006 U.S. Dist. LEXIS 1542, at *20 (S.D.N.Y. Jan. 17, 2006) (claims "essentially alleg[ing] that defendants failed to disclose information to investors and mismanaged the Funds . . . [were] claims of mismanagement of assets by defendants which fail to allege any injury independent of the alleged injury to the Funds").

"To bring a direct suit, the stockholder's claimed direct injury must be independent of any alleged injury to the corporation." *Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, No. 05-841, 2005 U.S. Dist. LEXIS 26837, at * 14 (D. Md. Nov. 3, 2005) (quotations omitted).[16] Far from alleging any independent harm, Plaintiffs' allegations make clear that their injuries are inseparable from purported harm to the funds themselves:

> [W]hen the true facts were subsequently disclosed, the prices of the Funds' publicly traded securities declined precipitously and Plaintiffs were harmed and damaged as a direct and proximate result of their purchases of the Funds' securities at artificially inflated prices and the subsequent decline in the prices of those securities when the truth began to be disclosed.

(Compl., ¶ 483.) Maryland law is clear that shareholders have no direct private cause of action for the diminution in the value of their individual shares due to mismanagement of the corporation.[17] Any "claim that the assets of a mutual fund have been depleted through

---

[16] The Funds are Maryland corporations and thus subject to Maryland law. *See Casden v. Burns*, 306 F. App'x 966, 974 (6th Cir. 2009) (holding that determination as to whether a plaintiff's claims are direct or derivative is governed by the law of the state of incorporation).

[17] *See, e.g.*, *Strougo v. Bassini*, 282 F.3d 162, 174-75 (2d Cir. 2002) (collecting Maryland case law and holding that plaintiff could not pursue direct claims for corporate mismanagement and waste); *Cowin v. Bresler*, 741 F.2d 410, 414 (D.C. Cir. 1984) ("[c]laims of corporate mismanagement must be brought on a derivative basis"); *see also Argiropoulos v. Kopp*, No. CCB-06-0769, 2007 U.S. Dist. LEXIS 22351, at *19 (D. Md. Mar. 26, 2007) (concluding that

mismanagement or other wrongdoing is one that should be brought derivatively." *In re Am.
Funds Fees Litigs.*, No. CV 04-5593, 2005 U.S. Dist. LEXIS 41884, at *18-19 (C.D. Cal. Dec.
16, 2005).[18]

In short, Plaintiffs have alleged that the "direct" cause of the decline in the Funds' share
prices – and, therefore, the decline in value of the Funds' holdings – was the mismanagement of
the Funds' portfolio. Thus, any harm suffered by Plaintiffs is indistinguishable from any harm
suffered by all other investors in the Funds. Because Plaintiffs did not bring such claims in a
derivative capacity, this Court should dismiss all of Plaintiffs' claims, which challenge the
management of the RMK Funds.[19]

## IV.   PLAINTIFFS CANNOT SATISFY THE PLEADING REQUIREMENTS FOR THEIR FRAUD CLAIMS

Plaintiffs' claims are due to be dismissed for failure to meet the heightened pleading
requirements of the PSLRA and Federal Rule of Civil Procedure 9(b).[20]

---

such allegations are "classic descriptions of waste and mismanagement of the corporation, and . .
. appropriately brought under a derivative action").

[18] Plaintiffs' mismanagement claims are indistinguishable from claims that courts routinely have
held are of a derivative and not direct nature.[18] Indeed, in 2010, the Alabama Supreme Court
issued an opinion that addressed materially identical claims against MAM, Regions, and Mr.
Kelsoe relating to the very same funds at issue in this case finding that the claims were derivative
and could not be brought by shareholders outside of a shareholder derivative action. *See Ex parte
Regions Financial Corp.*, 67 So. 3d 45 (Ala. 2010). The Alabama Supreme Court expressly held
that the key inquiry for distinguishing direct from derivative claims is "**whether the
shareholders have suffered an injury that is distinct from the injury suffered by the RMK
funds, or whether the injury to the shareholders merely derives from that injury.**" *Id.* at 51.
The Alabama Supreme Court reaffirmed this opinion in *Ex Parte Morgan Asset Management,
Inc.*, 86 So. 3d 309 (Ala. 2011).

[19] Any such claims were dealt with within the confines of the shareholder derivative action filed
against Defendants relating to the alleged mismanagement of the closed-end Funds. *See In re
Regions Morgan Keegan Closed-End Fund Litigation*, Case No. 2:07-cv-02830-SHM-dvk, in the
United States District Court for the Western District of Tennessee.

[20] Because Plaintiffs' claims under the Mississippi and Tennessee Securities Act and the
Exchange Act of 1934 are premised on fraud, Plaintiffs must satisfy the requirements of the

A. **The PSLRA Imposes Heightened Pleading Requirements Which Plaintiffs Fail to Meet.**

The PSLRA imposes heightened pleading requirements for Federal securities fraud claims. Specifically, Plaintiffs' claims arising under the Federal securities laws are subject to a heightened standard for pleading scienter, as well as a loss causation requirement. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 165 (2008); *see also Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 847 (6th Cir. 2007).

1. Plaintiffs' claims under the 1933 and 1934 Act fail to meet the heightened pleading requirements for scienter under the PSLRA.

The PSLRA requires that "the complaint shall, with respect to each act or omission . . . state with particularity facts giving rise to [1] a *strong inference* that the defendant acted with [2] *the required state of mind.*" *In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 344 (W.D. Tenn. 2001) (quoting 15 U.S.C. § 78u-4(b)(2)) (emphasis added). The PSLRA mandates dismissal of the complaint if the requirements for pleading scienter are not met. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (U.S. 2007); *see also In re Regions Morgan Keegan Secs*, 743 F. Supp. 2d at 754-755.[21]

---

PSLRA and Rule 9(b). While claims under the 1933 Securities Act do not allege fraud, Plaintiffs must also meet the heightened pleading requirements with respect to these claims because they have chosen to premise their claims on allegations of fraudulent conduct. *See In re Regions Morgan Keegan Secs*, 743 F. Supp. 2d 744, 754 (W.D. Tenn. 2010) (citing *Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 948 (6th Cir. 2009)); *see also, e.g.*, *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994) (holding that a "complaint's wholesale adoption of [fraud] allegations" under non-fraud claims for relief subjects a complaint to the requirements of Rule 9(b)); *Rubke v. Capital Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1135-36 (N.D. Cal. 2006) (same) (quotation omitted), *aff'd* 551 F.3d 1156 (9th Cir. 2009). For this reason, Plaintiffs must satisfy Rule 9(b) and the PSLRA's requirements with respect to their 1933 Securities Act claims as well.

[21] A showing of scienter is necessary for those Defendants against whom Plaintiffs have asserted claims of primary violations of the Federal securities laws. Plaintiffs assert primary violations of the 1933 Act against RHY and the Director Defendants. Plaintiffs assert primary violations of the 1934 Act against the Funds and the Officer Defendants.

(a)     Required State of Mind

To establish "the required state of mind" (known as scienter), a plaintiff must plead facts showing either the "intent to deceive, manipulate, or defraud" or " recklessness" — with "recklessness" being "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *P.R. Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681-682 (6th Cir. 2004) (citations omitted). Recklessness sufficient to satisfy the PSLRA is "a mental state apart from negligence and akin to conscious disregard." *La. Sch. Emples. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 478 (6th Cir. 2010) (quoting *Hoffman v. Comshare, Inc. (In re Comshare, Inc. Sec. Litig.*), 183 F.3d 542, 550 (6th Cir. 1999)). Thus, a "plaintiff may survive a motion to dismiss only by pleading with particularity facts that give rise to a strong inference that the defendant acted with knowledge or conscious disregard of the fraud being committed." *Id.* at 478-78.

Plaintiffs rely almost entirely on the Individual Defendants' positions as "officers" and "directors" of the Funds to satisfy the requirements for pleading scienter under the PSLRA. However, "scienter . . . cannot be inferred merely because of the defendants' positions in the company or the fact that they had access to the company's financial information. Instead, 'the [c]omplaint must allege specific facts and circumstances suggestive of their knowledge.'" *Local 295/Local 851 IBT Emplr. Group Pension Trust & Welfare Fund v. Fifth Third Bancorp*, 731 F. Supp. 2d 689, 726 (S.D. Ohio 2010) (quoting *P.R. Diamonds, Inc.*, 364 F.3d at 688); *see also Konkol v. Diebold, Inc.*, 590 F.3d 390, 397 (6th Cir. 2009).[22] With the exception of Mr. Kelsoe,

---

[22] Likewise, Plaintiffs' allegations as to the Individual Defendants' incentives to inflate the Funds' NAVs because of their compensation structure (*see* Compl., ¶ 67) fail to support a strong inference of scienter. "When analyzing the self-interest factor, a court must differentiate between 'motives common to corporation and executives generally' and "'motives to commit fraud.'" *In re Regions Morgan Keegan Secs*, 743 F. Supp. 2d at 758 (quoting *P.R. Diamonds*, 364 F.3d at

Plaintiffs do not plead *any* facts demonstrating that any Individual Defendant knowingly made false or misleading statements. Plaintiffs merely allege that "[o]wing to their positions with the Funds . . . [the Officer Defendants] knew or should have known about the failure to conduct due diligence, the inappropriate and inaccurate NAV calculations, the deficiencies in risk management, and the failure to follow pricing and risk assessment policies." (Compl., ¶ 392; *see also id.* at ¶¶ 448-453; 472-474 (allegations relating to the Director Defendants based on their role as "Directors" and their "senior executive positions").) These allegations are insufficient, as outlined above.

Plaintiffs' remaining allegations pertain largely to Mr. Kelsoe but do not demonstrate intentional or conscious misbehavior, and are insufficient as a matter of law to show a strong inference of scienter. For example, merely regurgitating the SEC's allegations that Mr. Kelsoe pressured broker-dealers to increase the quoted prices of certain securities does not establish scienter. (*See* Compl., ¶¶ 151-153.) Plaintiffs fail to explain why asking a broker-dealer to increase a quote that a portfolio manager thought was incorrect would be wrongful or "fraudulent," especially where the Funds' valuation guidelines authorized the use of multiple sources of information to verify prices, and where another entity was responsible for verifying any proposed adjustments.[23] To survive a motion to dismiss, Plaintiffs must have pleaded facts

---

690). "[S]ome motives[] are insufficient as a matter of law to establish scienter, such as a desire for the company to appear successful and an executive's desire to protect his position in the company and increase his compensation." *Fifth Third Bancorp.*, 731 F. Supp. 2d at 720; *see also La Pietra v. RREEF Am., LLC*, 738 F. Supp. 2d 432, 443-45 (S.D.N.Y. 2010) (same).

[23] The Funds' Annual Reports disclosed that market quotes, deemed inaccurate, could be replaced, as follows:

> When a Fund believes that a market quote does not reflect a security's true value, the Fund may substitute for the market value a fair value *estimate* made according to methods approved by the Board of Directors. The values assigned to fair value investments are based on available information and do not necessarily represent amounts that might ultimately be realized, since such amounts depend on future

demonstrating that Mr. Kelsoe consciously disregarded duties regarding the valuation of the Funds' securities *knowing* that any resulting valuations would necessarily be fraudulent. The Complaint contains no particularized factual allegations to that effect. Merely alleging that "[h]ad the Fund Accounting Department followed stated policies and procedures, it would have discovered that the price Kelsoe provided was false" is insufficient. (Compl., ¶ 142.) At most, these generalized assertions suggest possible mismanagement on the part of the entities responsible for managing the Funds pursuant to a contractual arrangement, not fraud on the part of the Funds or the Individual Defendants.

(b)      Strong Inference of Scienter

A "strong inference" of scienter, as required by PSLRA, is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (U.S. 2007). Thus, the reviewing court must consider – on the basis of the complaint as a whole, including all documents incorporated by reference, *id.* at 322-23, as well as the court's own "judicial experience and common sense," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) – whether there are "nonculpable explanations for the defendant's conduct" that are more likely than the plaintiff's explanation, *Tellabs*, 551 U.S. at 324. If so, the suit cannot proceed, because the inference of scienter is not "at least as likely as any plausible opposing inference." *Id.* at 328. Rather than showing fraud, Plaintiffs' allegations suggest a much more plausible inference; namely, that the alleged statements or "omissions" at issue stem from the consequences of the

> developments inherent in long-term investments. Further, *because of the inherent uncertainty of valuation*, such *estimated values* may differ significantly from the values that would have been used had a ready market for the investments existed, and the differences could be material.

Exs. I (2005 Ann. Rep., p. 54); J (2006 Ann. Rep., p. 79); K (2007 Ann. Rep., p. 83) (emphasis supplied).

global credit crisis and its impact on the Funds, rather than misconduct evidencing a strong inference of scienter.

It is certainly a much more plausible inference that the Funds' losses were the result of the impact of the global credit crisis, than fraudulent misconduct. Indeed, in cases following the financial crisis, courts – in finding no basis for inferring scienter – have recognized that "it is much more likely that [d]efendants (like many other financial institutions) underestimated the magnitude of the coming economic crisis and believed that they were taking adequate risk management and cautionary measures to account for any future downturn." *Woodward v. Raymond James Fin., Inc.*, 732 F. Supp. 2d 425, 436 (S.D.N.Y. 2010); *see also In re Societe Generale Sec. Litig.*, No. 08 Civ. 2495, 2010 U.S. Dist. LEXIS 107719, at *23 (S.D.N.Y. Sept. 29, 2010) (same); *In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 517 (S.D.N.Y. 2011) ("The Complaint may be said to 'give rise to an opposing and compelling inference that [d]efendants only engaged in bad (in hindsight) business judgments in connection with ARS, and did not engage in the alleged conduct with an intent to deceive investors.'" (quoting *In re Citigroup ARS Litig.*, 700 F. Supp. 2d 294, 305 (S.D.N.Y. 2009))). Based on the foregoing, this suit cannot proceed because the inference of scienter is not "at least as likely as any plausible opposing inference" – which, here, is the market downturn. *Tellabs*, 551 U.S. at 328.

2.    Plaintiffs' allegations fail to show loss causation as required by the PSLRA.

Loss causation requires a direct, causal connection between the alleged misrepresentation and the plaintiffs' loss. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Here, Plaintiffs fail to allege any facts demonstrating that the Funds' stock price declined due to the revelation of fraudulent conduct concerning the Funds. While Plaintiffs cite a litany of purported "corrective disclosures," even the "corrective disclosures" cited by Plaintiffs expressly attribute

the Funds' losses not to fraud, but to "a breakdown in the market for hard-to-value debt-backed securities," and observed that the Funds declined as "financial institutions worldwide faced credit concerns." (Compl., ¶ 355.) Corrective disclosures must reveal to the market the specific prior misrepresentations or omissions that form the basis for the plaintiff's claims of fraud. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) ("[L]oss causation is not adequately pled unless a plaintiff alleges that the market learned of and reacted to the practices the plaintiff contends are fraudulent, as opposed to merely reports of the defendant's poor financial health generally.").[24] Without exception, these "disclosures" do nothing more than assert that certain RMK mutual funds lost value during the financial crisis.

Indeed, as other courts have observed in the wake of that crisis, it is far more plausible that Plaintiffs' losses resulted from the "overnight" evaporation of the market for ABS and MBS, than Defendants' fraud. *See, e.g.*, *Waterford Twp. Gen. Emples. Ret. Sys. v. SunTrust Banks, Inc.*, No. 1:09-cv-617, 2010 U.S. Dist. LEXIS 85755, at *14-15 (N.D. Ga. Aug. 19, 2010) (Plaintiffs failed to plead loss causation where "[t]he eleven percent drop occurred during a financial crisis that hit the financial services industry particularly hard."); *In re First Marblehead Corp. Sec. Litig.*, 639 F. Supp. 2d 145, 165 (D. Mass. 2009) ("'[W]hen the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by fraud decreases.'" (citation omitted)); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005) (holding that "a plaintiff's claim fails when 'it has not

---

[24] The bare assertion that a drop in the price of a security followed a public announcement of poor financial results is insufficient as a matter of law to establish loss causation under controlling case-law. *See Dura Pharm.*, 544 U.S. at 342-43; *D.E. & J. Ltd. P'ship v. Conaway*, 133 F. App'x 994, 1000-01 (6th Cir. 2005). A plaintiff, therefore, must "prove that its loss resulted directly *because* of the correction to a prior misleading statement; otherwise there would be no inference raised that the original, allegedly false statement caused an inflation in the price to begin with." *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton*, 597 F.3d 330, 336 (5th Cir. 2010).

adequately ple[]d facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events'" (citation omitted)).

The "corrective disclosures" identified by Plaintiffs are insufficient to show loss causation with respect to Plaintiffs' 1933 and 1934 Act claims. The failure to plead loss causation requires dismissal of these claims as a matter of law.[25]

### B.   Plaintiffs have Failed to Plead their Claims with Particularity as Required by Rule 9(b).

Not only have Plaintiffs failed to meet the heightened pleading requirements of the PSLRA, Plaintiffs have similarly failed to meet the heightened pleading requirements of Rule 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Giving definition to this rule, the Sixth Circuit has said that at a minimum a plaintiff must allege: (1) "the time, place, and content of the alleged misrepresentation on which he or she relied;" (2) "the fraudulent scheme;" (3) "the fraudulent intent of the defendants;" and (4) "the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (quotations omitted). Crucially, simply copying allegations, nearly verbatim, from filings made by federal and state regulators in other proceedings is insufficient to plead claims of fraud. *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*,

---

[25] Loss causation is an affirmative element of a claim under § 10(b) of the 1934 Exchange Act or Rule 10b-5. *See* 15 U.S.C. § 78u-4(b)(4). Therefore, Plaintiffs must plead facts sufficient to render their theory of loss causation plausible. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009) (plaintiff must allege, "in respect to loss causation, a facially 'plausible' causal relationship between the fraudulent statements and omissions and plaintiff's economic loss"). Where, as here, Plaintiffs fail to plead *any* facts supporting a viable theory of loss causation, and in fact plead facts affirmatively defeating such a theory, 1933 Securities Act claims likewise fail. *See* 15 U.S.C. § 77k(e); § 77l(b); *see also Azzolini v. CorTS Trust II for Provident Fin. Trust I*, No. 1:03-CV-1003, 2005 U.S. Dist. LEXIS 38454, at *20 (E.D. Tenn. Dec. 14, 2005) (noting that dismissal of 1933 Act claims is required "[i]f it is apparent on the face of the complaint the decline in share value is not related to any material misstatement and/or omission").

218 F.R.D. at 78-79.[26] Plaintiffs' Complaint, stripped of improper allegations of the regulators, fails to meet the standards of Rule 9(b). *See McLaughlin v. Chase Home Fin. LLC*, 519 Fed. Appx. 904, 906 (6th Cir. 2013) (affirming dismissal of fraud and misrepresentation claims where plaintiffs failed to allege by who and when the alleged misrepresentations were made and why they were intentional). As set forth above, Plaintiffs fail to plead fraudulent intent (*see supra* Part A(1)) and injury from the fraud (*see supra* Part A(2)); thus, failing to meet the requirements of 9(b).

For failing to meet both the PSLRA and 9(b) pleading standards, Plaintiffs' Complaint is due to be dismissed.

## V.   PLAINTIFFS FAIL TO ESTABLISH THAT ANY OF THE FUNDS' PUBLIC FILINGS CONTAINED ACTIONABLE MISREPRESENTATIONS OR OMISSIONS

Plaintiffs' claims are based on four general categories of alleged misstatements and omissions: (1) the Funds' failure to disclose their true nature and risks; (2) the extent to which the Funds concentrated investments in certain types of securities (*i.e.*, ABS and MBS); (3) mis-valuation of securities held in the Funds' portfolios; and (4) the comparison of the Funds' returns against an inappropriate benchmark index. (*See generally* Compl., ¶ 4.) These allegations disregard the actual contents of the filings at issue, which disclosed the information Plaintiffs allege was misstated or omitted, and, therefore, Plaintiffs' allegations fail as a matter of law.

---

[26] Importantly, the allegations Plaintiffs copy from the regulatory proceedings do not pertain specifically to any of the particular Funds at issue. Rather, these allegations pertain generally to the "Funds" as a whole. (*Compare* Compl., Ex. V, ¶¶ 54-76 (specifically discussing the Open-End Funds, which are not at issue) *with* ¶ 77 (only generally discussing the four Closed-End Funds).) As such, even if such parroting of the regulatory complains and consent orders was proper – it is not – these allegations are not sufficiently particularized to support Plaintiffs' claims. *See In re Regions Morgan Keegan Secs*, 743 F. Supp. 2d at 756 (similar allegations failed to meet even Rule 8(a)'s "more forgiving standard requiring plausibility").

## A. The Funds' Offering Documents Disclosed the Risk Associated with an Investment in the Funds.

Plaintiffs' claims hinge on their assertion that the Defendants omitted or misrepresented information about the Funds. However, Plaintiffs' claims fail as a matter of law because Plaintiffs have failed to adequately allege any material misstatements or omissions that are not directly contradicted by the actual public filings at issue. *See, e.g.*, *La Pietra v. RREEF Am., LLC*, 738 F. Supp. 2d 432, 442-43 (S.D.N.Y. 2010) (dismissing fraud claims where "[m]any of the facts that the plaintiffs allege were omitted . . . were disclosed").

The Funds' risk disclosures were clear and unequivocal, stating in bold type on the cover page of each Fund's prospectus, that "**[t]he Fund[s'] strategy of investing the majority of its total assets in below investment grade debt securities and its expected use of leverage involve a high degree of risk. Stockholders can lose some or all of their investment.**" (Ex. E (RMA Prosp., Cover Page); *see also id.* Exs. A, C, G, (RMH, RSF, & RHY Prosp., Cover Pages) (same).) The Funds' Offering Documents also discussed the risks with respect to the assets in which the Funds invested, including the risks of below investment grade securities,[27] ABS,[28] and MBS,[29] among numerous others. (*See* Ex. M (Appx. of Disclosures).)[30] Thus, no investor who

---

[27] Below Investment Grade Securities: "Below investment grade debt securities are commonly referred to as 'junk bonds.' Below investment grade quality securities are considered speculative with respect to an issuer's capacity to pay interest and repay principal and are susceptible to default or decline in market value due to adverse economic and business developments. These securities are less liquid than investment grade securities." (Exs. G (RHY Prosp., pp. 8, 28-29); A (RMH Prosp., pp. 7, 25); E (RMA Prosp., pp. 7-8, 26-27); C (RSF Prosp., pp. 8, 26-27).)

[28] ABS Risk: "Payment of interest and repayment of principal on asset-backed securities may be largely dependent upon the cash flows generated by the assets backing the securities . . . . Asset-backed security values may also be affected by the creditworthiness of the servicing agent for the pool. . . ." (Exs. G (RHY Prosp., pp. 9, 30); A (RMH Prosp., pp. 8, 26); E (RMA Prosp., pp. 8, 27-28); C (RSF Prosp., pp. 8, 27).)

[29] MBS Risk: "The value of mortgage-backed securities may . . . change due to shifts in the market's perception of issuers . . . . In addition, mortgage-backed securities are subject to the credit risk associated with the performance of the underlying mortgage properties." (Exs. G

---

actually read the Funds' Offering Documents, as Plaintiffs claim they did (*see* Compl., ¶ 403), could possibly have been misled about the risk of the Funds or the nature of the Funds' investments.

### B.     The Funds Disclosed Their Concentration in ABS and MBS.

Plaintiffs repeatedly allege that the Funds misrepresented their compliance with an investment restriction providing that the Funds may not "purchase the securities of any issuer . . . if, as a result, 25% or more of the Fund's total assets would be invested in the *securities of companies the principal business activities of which are in the same industry*." (Compl., ¶ 75.)

Plaintiffs have completely failed to plead a violation of this restriction. Plaintiffs claim the Funds violated this restriction because "Asset-Backed Securities" and "Mortgage Lenders and Loan Correspondents" constitute "industries," as defined by the SEC's Standard Industrial Classification system, and the Funds invested 25% or more of their assets in ABS and MBS. (*Id.* at ¶¶ 81-83.) Plaintiffs, however, misconstrue the meaning of this investment restriction as it does not restrict the types of securities in which the Funds could invest but rather limits investments "in the securities of companies *the principal business activities of which are in the same industry*." Plaintiffs have not pleaded a violation of the actual investment restriction because they failed to plead a single fact regarding the issuing companies and the industry in which those companies principally operated.[31]

---

(RHY Prosp., pp. 9, 29-30); A (RMH Prosp., pp. 7, 26); E (RMA Prosp., pp. 8, 27); C (RSF Prosp., pp. 8, 27).)

[30] For the convenience of the Court, Defendants have attached an Appendix of Disclosures, which groups the Funds' disclosures (verbatim with respect to the Multi-Sector Fund and with citation to the substantially same language concerning the other Funds) by category.

[31] Even if the Court were to assume that the Funds were in violation of their investment restrictions, Plaintiffs have failed to state a claim. Breaching an investment restriction constitutes mismanagement, not fraud. At most, Plaintiffs' allegations that the Funds violated investment restrictions and/or guidelines pertain to § 13 of the Investment Company Act of 1940, 15 U.S.C.

Moreover, even assuming Plaintiffs adequately plead the Funds were in violation of the 25% industry concentration restriction – they were not – such a violation cannot serve as the basis of a fraud claim because, at all times, the extent of the Funds' investment in any category of security was disclosed. *See, e.g.*, *La Pietra*, 738 F. Supp. 2d at 442-43. In the Funds' annual and semi-annual reports, the Funds included an asset-allocation pie chart that clearly indicated that well over 25% of the Funds' assets were invested in ABS and MBS. (*See* Exs. I (2005 Ann. Rpt., pp. 4, 18, 34); M (Appx. of Disclosures).) Similarly, each Fund's disclosures also included a portfolio schedule that listed each security held by name and listed each category of securities as a percentage of the Fund's Net Assets. (*See* Ex. I (2005 Ann. Rep., p. 6 (listing "Asset-Backed Securities-Investment Grade" as 15.6% of RMA Fund Net Assets, and "Asset-Backed Securities-Below Investment Grade" as 55.2% of RMA Fund Net Assets).)[32] Overconcentration – or a violation of any investment restriction, for that matter – where it is openly disclosed, is not an actionable misrepresentation or omission upon which Plaintiffs can base their claims. *See La Pietra*, 738 F. Supp. 2d at 442-43 (S.D.N.Y. 2010) (dismissing fraud claims where "[m]any of the facts that the plaintiffs allege were omitted . . . were disclosed"); *see also Paskowitz v. Pac. Capital Bancorp*, No. CV 09-6449, 2009 U.S. Dist. LEXIS 122365, at *12-13 (C.D. Cal. Nov. 6, 2009) (same).

---

§ 80a-13, for which there is no private right of action. *See In re Regions Morgan Keegan Secs*, 743 F. Supp. 2d at 761-62 (finding no private right of action under § 13 and dismissing this claim).

[32] *See also* Ex. I (2005 Ann. Rpt., pp. 20-21 (27.5% and 62.8% of the High Income Fund's Net Assets in Investment Grade and Non-Investment Grade ABS, respectively), 36-37 (26.2% and 61.1% of the Strategic Fund's Net Assets in Investment Grade and Non-Investment Grade ABS, respectively)); Ex. J (2006 Ann. Rpt., pp. 6, 9, 22, 25, 40, 43, 54, 57-58); Ex. L (2007 Ann. Rpt., pp. 5, 8-9, 23, 26-27, 41, 44-45, 59, 62-63). The Funds' Semi-Annual and Quarterly reports contained asset schedules revealing similar concentrations. (*See, e.g.*, Exs. K, M-R.)

### C.   Plaintiffs Have Failed to Plead Any Actionable Misrepresentations or Omissions With Respect to Valuation.

Plaintiffs claim that Defendants deliberately overvalued certain securities in the Funds' portfolio (Compl., ¶¶ 4, 17-21, 124-150); however, Plaintiffs fail to plead facts to support this claim. Although Plaintiffs repeat the *allegations* of the SEC that Kelsoe submitted 262 supposedly unsupported price adjustments to Fund Accounting between January and July 2007, Plaintiffs include no factual allegations regarding the effect of these adjustments on the Funds' net asset value or whether the adjustments even pertained to the Funds at issue in this litigation. Similarly, Plaintiffs fail to plead facts supporting any conclusion that Mr. Kelsoe's alleged "manipulation" or "screening" of dealer quotes materially affected the Funds at issue. (*See* Compl., ¶ 135.) While Plaintiffs assert that the Funds' NAVs were "inflated" and "not timely written down," they fail to quantify these assertions in any way and rely entirely on conclusory statements. (*See, e.g.*, Compl., ¶¶ 138, 147, 278, 294, 305.) Such allegations are insufficient as a matter of law. *See, e.g.*, Fed. R. Civ. P. 9(b).

### D.   Plaintiffs Fail to Allege Facts that Would Establish that the Funds' Choice of a Benchmark Index Supports a Claim under the Securities Laws.

Plaintiffs allege that "[t]he [Lehman] High Yield Index was an inappropriate peer or benchmark for comparison with the Funds because the holdings comprising the Lehman High Yield Index were not comparable to the Funds' holdings. . . . The Funds' portfolios were inherently riskier than, and deviated greatly from, the portfolios within the High Yield Index." (Compl., ¶ 172.)[33] In *Hunt*, the Second Circuit rejected such an argument and concluded that

---

[33] By alleging that the Funds' choice of index was "inappropriate," Plaintiffs concede that choice of an index involves an exercise of discretion. Plaintiffs have pleaded no facts demonstrating that the Funds' selection of an allegedly "inappropriate" index was intentional or deliberate. By proposing alternative indices based on a hindsight analysis of which indices performed similarly

"[t]he chart purported only to compare the Fund's *returns* to those of the Lehman Brothers indexes. No reasonable investor could have viewed this chart as an exhaustive description of the Fund's *risks*." *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 730 (2d Cir. 1998) (dismissing claim that the use of a benchmark index was misleading). Additionally, the Funds affirmatively disclosed that their portfolio composition could (and did) deviate from the chosen bond fund benchmark. (*See* Exs. J (2006 Ann. Rpt., p. 4) (The "prospectus gives the management team latitude to look at sectors that are not in the index."); *see also* M (Appx. of Disclosures).)

Plaintiffs also seek to infer fraud from the fact that the Funds ultimately underperformed their benchmark and other "peer funds." (*See, e.g.*, Compl., ¶ 178 ("[T]he Funds collapsed in late 2007 while the value of the 35 non-RMK closed-end funds held up through the summer of 2008").) Such a theory is classic fraud by hindsight, and fails as a matter of law. *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 8 (2d Cir. 1996) ("To show misrepresentation, the complaint must offer more than allegations that the portfolios failed to perform as predicted."); *In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 958-960 (S.D. Ohio 2009) (rejecting allegations of fraud by hindsight). Thus, Plaintiffs have failed to allege actionable misstatements or omissions based on either the chosen benchmark and/or the performance of the Funds compared to their peers.

## VI. PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT TO DEMONSTRATE THAT ANY OF THE DEFENDANTS ARE CONTROL PERSONS UNDER SECTIONS 15 OR 20(A)

Plaintiffs allege control person liability against the Director Defendants under Section 15 of the 1933 Act and against the Director Defendants, Officer Defendants, MAM, MK Holding,

---

to the Funds during the credit crisis, Plaintiffs merely propose to substitute their own hindsight judgment for that of the Funds. (Compl., ¶¶ 180, 182.)

and Regions under Section 20(a) of the 1934 Exchange Act. (Compl., ¶¶ 468-477; 485-492.) These claims fail as a matter of law.[34]

As an initial matter, Plaintiffs must adequately plead a primary violation of the securities laws to maintain an action under Section 15 or Section 20(a). *See P.R. Diamonds*, 364 F.3d at 696 (requiring "an underlying violation" to establish a Section 20(a) claim); *Azzolini v. CorTS Trust II*, No. 1:03-CV-1003, 2005 U.S. Dist. LEXIS 31853, at *42 (E.D. Tenn. Sept. 16, 2005) (requiring a "primary securities law violation" to state a claim under Section 15). Because Plaintiffs' primary securities law violations under Sections 11, 12(a)(2), and 10b are due to be dismissed, Plaintiffs' claims for control person liability under Section 15 and 20(a) must also be dismissed.[35]

Even assuming Plaintiffs have alleged an underlying securities law violation – they have not – Plaintiffs' Sections 15 and 20(a) claims are nonetheless due to be dismissed because Plaintiffs have failed to plead the requisite "control" necessary to support their claims.

To state a claim for control person liability under Section 20(a), Plaintiffs must plead facts showing that the controlling Defendants "directly or indirectly controlled the person liable

---

[34] Plaintiffs may not seek to hold the Director and Officer Defendants liable both primarily under Sections 11 and 10(b), and as control persons under Sections 15 and 20(a). *See, e.g.*, *Kalnit v. Eichler*, 85 F. Supp. 2d 232, 246 (S.D.N.Y. 1999); *see also P.R. Diamonds*, 364 F.3d at 697 n.4 (noting this principle but declining to decide the issue where plaintiffs had not pleaded a primary violation). Control person liability under Sections 15 and 20(a) is an alternative, and not a supplement to, primary liability under Sections 11 and 10(b). *See Lemmer v. Nu-Kote Holding, Inc.*, No. 3:98-cv-0161, 2001 U.S. Dist. LEXIS 13978, at *41-42 (N.D. Tex. Sept. 6, 2001), *aff'd* 71 Fed. Appx. 356 (5th Cir. 2003).

[35] For reasons outlined herein, Plaintiffs have failed to plead violations of the 1933 and 1934 Acts against the Individual Defendants. (*See supra* Part IV.) Likewise, for reasons discussed more fully in co-defendants' brief, Plaintiffs have failed to plead primary violations of the 1933 and 1934 Acts against the Fund defendants as well. (*See* Funds' Brief, PACER Doc. 49-1, at Parts IV-VI.) Thus, Plaintiffs have failed to plead primary violations of the federal securities laws upon which to base their control person claims under Sections 15 and 20(a).

for the securities law violation." *P.R. Diamonds, Inc.*, 364 F.3d at 696.[36] The only controlling Defendant Plaintiffs even assert was a controlling person over a primary violator (*i.e.*, the Funds or the Officer Defendants) is MAM. (Compl., ¶ 487 (emphasis added).) Thus, with no allegations of control, Plaintiffs' claims as to the Director Defendants, Officer Defendants, MK Holding, and Regions fail as a matter of law. With respect to MAM, Plaintiffs' allegations also fail as a matter of law because under Section 20(a) the contractual roles performed by MAM with respect to the Funds do not create secondary liability. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994).

To state a claim for control person liability under Section 15, Plaintiffs must plead facts showing that the controlling Defendants possessed both "power to control the specific transaction or activity upon which the primary violation is predicated" and "actual participation (*i.e.*, exercise [of] control) in the operations of the primary violator in general." *Azzolini*, 2005 U.S. Dist. LEXIS 31853 at *42. Plaintiffs fail to plead facts sufficient to establish that the Director Defendants exercised control over the Funds and instead rely on a conclusory assertion that the Director Defendants' positions and job descriptions automatically gave them control over the Funds and the purportedly fraudulent conduct. (*See* Compl., ¶ 472.) Such pleading is insufficient. *Frank v. Dana Corp.*, 649 F. Supp. 2d 729, 746 (N.D. Ohio 2009).

## CONCLUSION

For the reasons set forth herein, it is respectfully requested that this Court dismiss Plaintiffs' Complaint in its entirety with prejudice.

---

[36] "'Control' is defined as 'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" *P.R. Diamonds, Inc.*, 364 F.3d at 696-697 (quoting 17 C.F.R. § 230.405).

Respectfully submitted this 12th day of November, 2013.

s/ Peter S. Fruin
Peter S. Fruin

Counsel for Defendants
Regions Financial Corporation,
MK Holding, Inc., Morgan Asset
Management, Inc., James C. Kelsoe, Jr.,
Brian B. Sullivan, Joseph Thompson Weller,
Allen B. Morgan, and J. Kenneth Alderman

**OF COUNSEL:**

Peter S. Fruin
**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000
(205) 254-1999 (fax)
pfruin@maynardcooper.com

Shepherd D. Tate
Michael A. Brady
**BASS, BERRY & SIMS PLC**
The Tower at Peabody Place
100 Peabody Place
Memphis, Tennessee 38103
(901) 543-5900
(901) 543-5999 (fax)
state@bassberry.com
mbrady@bassberry.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on November 12, 2013 a true and correct copy of the foregoing document was forwarded by electronic means through the Court's ECF System upon the following:

Christopher S. Campbell
Laura S. Martin
**HARRIS SHELTON HANOVER WALSH, PLLC**
One Commerce Square Building
40 S. Main Street, Suite 2700
Memphis, Tennessee 38103
(901) 525-1455
(901) 526-4086 (fax)
ccampbell@harrisshelton.com
lmartin@harrisshelton.com

James A. Dunlap, Jr.
**JAMES A. DUNLAP JR. & ASSOCIATES LLC**
310 Windsor Gate Cove NE
Atlanta, Georgia 30342
(404) 354-2363
(404) 745-0195 (fax)
jim@jamesdunlaplaw.com

*Counsel for Plaintiffs*

Kevin C. Logue
**PAUL HASTINGS LLP**
75 East 55th Street
New York, New York 10022
(212) 318-6039
(212) 230-7620 (fax)
kevinlogue@paulhastings.com

*Counsel for Defendants RMK High Income Fund, Inc., RMK Strategic Income Fund, Inc., RMK Advantage Income Fund, Inc., and RMK Multi-Sector High Income Fund, Inc.*

R. Harold Meeks , Jr.
**JAMES BATES BRANNAN GROVER LLP**
The Lenox Building
3339 Peachtree Road NE
Suite 1700
Atlanta, Georgia 30326
(404) 997-6020
(404) 997-6021 (fax)
hmeeks@jamesbatesllp.com

*Counsel for Defendant Carter E. Anthony*

s/ Peter S. Fruin
OF COUNSEL