**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| JAMES AND BARBARA WARWICK, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | )   CASE NO. 2:09-md-02009-SHM |
| RMK HIGH INCOME FUND, INC., et al., | ) |
| | )   CASE NO. 2:13-cv-02653 |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

James A. Dunlap Jr., Esq.
**JAMES A. DUNLAP JR. & ASSOC. LLC**
Georgia State Bar No.  003280
310 Windsor Gate Cove NE
Atlanta, Georgia  30342
404-354-2363
404-745-0195 (fax)
jim@jamesdunlaplaw.com

Christopher S. Campbell
Laura S. Martin
**HARRIS SHELTON HANOVER WALSH, PLLC**
One Commerce Square Building
40 S. Main Street, Suite 2700
Memphis, Tennessee 38103

Counsel for Plaintiffs

1

# Table of Contents

I.      Defendants' Motions to Dismiss are based on extrinsic testimony contrary to the requirements of FRCP Rule 12(b)..................................................................................... 1

II.     Plaintiff's claims are timely. ...................................................................................... 1

    A.  The Defendants' statute of limitations affirmative defense is inappropriate for consideration by the Court at this time. .................................................................... 1

    B.  Plaintiff's claims are timely filed by virtue of the discovery rule.......................... 1

    C.  Plaintiff's claims are not barred by statutes of limitation. .................................... 2

        1.  *American Pipe* tolling applies to statutes of repose......................................... 5

        2.  Plaintiff did not opt out of the class action claims against Defendants by filing an arbitration proceeding. ................................................................... 11

        3.  Plaintiff's Mississippi Securities Act claim is not barred by the five-year statute of repose. ............................................................................................ 13

        4.  Plaintiff's Tennessee Securities Act and Tennessee Consumer Protection Act claim is not barred by the five-year statute of repose.................................... 13

    D.  Plaintiff's arbitration filing did not prevent *American Pipe's* tolling effect. ....... 14

III.    Plaintiff has adequately stated a claim upon which relief may be granted as to the Defendants. .............................................................................................................. 15

IV.     Plaintiff satisfies the pleading requirement for fraud claims. ............................... 15

    A.  Plaintiff adequately alleges loss causation............................................................. 17

    B.  Plaintiff adequately alleges scienter....................................................................... 17

    C.  Plaintiff adequately alleges loss causation............................................................. 18

    D.  Plaintiff adequately alleges reliance....................................................................... 18

    E.  Plaintiff's claims are not derivative. ...................................................................... 19

    F.  Plaintiff alleged facts sufficient to demonstrate that the defendants are control persons under Section 15 or 20. ............................................................................. 19

    G.  The Defendants' defenses are severely limited under the Mississippi Securities Act............................................................................................................................ 20

V.      Plaintiff has standing to bring this action............................................................... 21

VI.     The arbitration decision does not preclude Plaintiff's claims in this case. .......... 21

    A.  The issues in this case differ from those in the arbitration and were not decided by the arbitrators. ................................................................................................... 22

    B.  Res judicata principles are inapplicable because Plaintiff had no ability to sue any or all defendants in the arbitration proceeding...................................................... 23

    C.  The federal courts have been cautious and selective in giving preclusive effect to arbitration awards................................................................................................... 25

    D.  Applying res judicata would contravene principles of due process and fundamental fairness. ............................................................................................. 30

Plaintiffs James and Barbara Warwick ("Plaintiff"), by and through counsel, files their response to Defendants' Motions to Dismiss [Docs. 45, 49 and 50] as follows:

## I.      Defendants' Motions to Dismiss are based on extrinsic testimony contrary to the requirements of FRCP Rule 12(b).

Defendants' Motions to Dismiss are based upon his attorney's unsworn testimony and not based within the four corners of Plaintiff's Complaint.  Doc. 44-1 ("Defendant Anthony would affirm…").  Therefore, Defendants' motions should in no way be considered Rule 12(b) motions but, rather, should be converted into motions for summary judgment under FRCP 56 for the Court's consideration after discovery is completed.

## II.     Plaintiff's claims are timely.

### A.      The Defendants' statute of limitations affirmative defense is inappropriate for consideration by the Court at this time.

Defendants' assert a statute of limitations affirmative which is inappropriate for consideration in a motion to dismiss.  "Determining when [a plaintiff] would have discovered facts constituting a violation is, necessarily, a fact-intensive inquiry, making the resolution of the issue inappropriate for a motion to dismiss."  *In re Regions Morgan Keegan Securities, Derivative and ERISA Litigation*, Case No. 07-cv-02830 [Doc. 246], March 30, 2012, p. 13 (citations).

### B.      Plaintiff's claims are timely filed by virtue of the discovery rule.

Plaintiff's Tennessee law claims are clearly subject to the discovery rule.  *Eldrige v. Savage*, No. M2012-00973-COA-R3-CV, 2012 WL 6757941 (Tenn. Ct. App. December 28, 2012).  In this case, Plaintiff alleged that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so.  Plaintiff also alleged that the plaintiff could not have

1

discovered the injury or the identity of the wrongdoer despite reasonable care and diligence. Plaintiff also alleged that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer.  Finally, Plaintiff alleged that the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

"As it currently exists in Tennessee, the doctrine of fraudulent concealment is aligned with the discovery rule." *Redwing*, 363 S.W.3d at 462. For instance, "[i]n a discovery rule case, the plaintiff may claim that the defendant intentionally prevented him from discovering his injury," and if that claim is proved true, "the doctrine of fraudulent concealment applies." *Id.* at 462 n.26. "For the purposes of both the discovery rule and the doctrine of fraudulent concealment, the pivotal issue is whether [the plaintiff] would have discovered the [defendant's] allegedly wrongful acts had he exercised reasonable care and diligence." *Id.* at 466.  *Eldrige v. Savage* (Tenn. App., 2012);  Therefore, under Tennessee law, Plaintiff has adequately alleged concealment which provides tolling of state law claims.

### C.    Plaintiff's claims are not barred by statutes of limitation.

Even without benefit of tolling, Plaintiff's claims have been timely filed.  Under federal law, Plaintiff is entitled to bring his claim two years after the discovery of the facts constituting the violation; or five years after such violation.[1]  In this case, the Plaintiff's claims did not accrue until all elements of the claim are reasonably discoverable to the plaintiff.

---

[1] 28 USC § 1658 - Time limitations on the commencement of civil actions arising under Acts of Congress
(a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

In *Merck & Co. v. Reynolds,* 130 S. Ct. 1784, 1790 (2010), plaintiffs brought a 10b-5 action against Merck & Co., alleging that it had "knowingly misrepresented the risks of heart attacks accompanying the use of Merck's pain-killing drug, Vioxx (causing to economic losses when the risks later became apparent)." The applicable statute of limitations states that a cause of action may be brought no later than the earlier of two years after discovery of the facts constituting the violation or five years after the violation itself. 28 U.S.C. § 1658(b). Merck argued that the plaintiffs knew or should have known of facts constituting the violation more than two years prior to filing their complaint. *Merck,* 130 S. Ct. at 1792. The district court agreed and dismissed the complaint, and the Third Circuit reversed. *Id.* at 1792-93.  Merck argued before the Supreme Court that the statute of limitations began to run when the plaintiffs were on "inquiry notice," which it defined as the point when a plaintiff possesses information "sufficiently suggestive of wrongdoing that he should conduct a  further inquiry." *Id.* at 1797 (internal quotation marks omitted). Merck contended that a number of public disclosures concerning the risks associated with Vioxx put the plaintiffs on inquiry notice more than two years before they filed suit, making their claim untimely.  *Id.*  In a unanimous opinion, the Supreme Court rejected Merck's proposed inquiry notice standard, holding that the limitations period for a 10b-5 claim "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'—whichever comes first." *Id.* at 1798 (emphasis added).  Among the facts a reasonably diligent plaintiff must discover to

---

(b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c (a)(47)), may be brought not later than the earlier of—
(1) 2 years after the discovery of the facts constituting the violation; or
(2) 5 years after such violation.

trigger the statute of limitations, the Court continued, are facts showing scienter—"an important and necessary element" of the claim. *Id.*

Applying these standards, the Court reasoned that an FDA warning letter and products-liability complaints filed against Merck did not contain enough specific information concerning the defendants' states of mind to trigger the limitations period. *Id.* at 1798-99. Because the plaintiffs alleged no facts suggesting scienter on the part of Merck more than two years prior to filing of the complaint, the Court affirmed the Third Circuit's judgment. *Id.* at 1799. In this case, there is no evidence of scienter that was available to Plaintiff exercising reasonable diligence on each claim within two years of the filing of Plaintiff's Complaint on August 22, 2013.

Under well-established Supreme Court precedent, the filing of a putative class action under Federal Rule of Civil Procedure 23 stops the running of applicable statutes of limitations for <u>all persons</u> within the parameters of the putative class. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974); *Crown, Cork & Seal Co. Inc. v. Parker*, 462 U.S. 345 (1983). In this case, it's undisputed that plaintiffs were members of the class identified in the class complaints filed in the *Regions Morgan Keegan Closed End Fund Litigation*, (hereinafter "closed end fund class action").[2] The filing of this class proceeding therefore stopped the running of the statutes of limitation applicable to plaintiffs' claims. Thus, the claims plaintiffs assert in their recently-filed complaint are not barred by the applicable statutes of limitations.

---

[2] Western District of Tennessee, Case No. 2:07-cv-02830-SHM.

1.   *American Pipe* **tolling applies to statutes of repose.**

Defendants contend that the statutes of limitations should not be deemed to have been tolled by the class filing.  Plaintiff respectfully submit that defendants' arguments are not persuasive.

In its March 30, 2012 order addressing defendants' motion to dismiss in the closed end fund class action, this Court adopted the majority position that "tolling the limitations period while class certification is pending does not compromise the purposes of statutes of limitation and repose."  Order at 23, *citing Joseph v. Wiles*, 223 F.3d 1155, 1167 (10th Cir. 2000), and other authorities.

Plaintiff respectfully submits that the Court should decline defendants' argument that the Court should reverse its position based on the recent – and deeply flawed –*Indymac* decision in the Second Circuit.  In addition to diverging from the weight of authority, the simplistic analysis in *Indymac*:

- Ignored the foundational point in *American Pipe* that, given the nature of a Rule 23 action, the filing of a class action means that claims have been asserted by <u>all</u> members of the putative class and the objectives of the statute of limitations have satisfied.

- Found an Enabling Act problem with Rule 23's effect on a statute of repose without applying the Supreme Court's legal directive that a federal rule may affect a litigant's substantive rights so long as it governs only the <u>procedure</u> by which those rights are enforced and does not alter the rules of decision by which the court will adjudicate rights

5

- And if followed, would wreak havoc in the class action arena and undermine other important federal rules.

   a.   **The Tenth Circuit and a majority of federal courts have held that *American Pipe* applies to statutes of repose.**

As noted, in *Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000), the Tenth Circuit Court of Appeals held that *American Pipe* applies to the three-year limitations period in Section 13 of the Securities Act ("§ 13"). The court explained that, under *American Pipe*, the commencement of the original class suit suspended the running of the statute for all members of the class. *Id.* at 1168.

The court also held that *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991), which held that equitable tolling does not apply to statutes of repose, had no relevance because the tolling of Joseph's claim was better understood as "legal rather than equitable in nature" because it is based on the filing of a Rule 23 class action. *Id.* at 1166-67.

More recently, the Supreme Court stated in *Credit Suisse Securities v. Simmonds*, 132 S.Ct 1414, 2012 U.S. Lexis 2535 (2012), that, in *American Pipe*, "we based our conclusion on the "efficiency and economy of litigation which is a principal purpose of Rule 23 class actions." The Court added that some federal courts have employed the term "legal tolling" to describe *American Pipe's* holding. *Id.,* at n. 6.

The Tenth Circuit emphasized that Joseph's claim was in fact brought within §13's three-year period by virtue of the class filing of which Mr. Joseph was a member. Thus, "application of .. . *American Pipe* . . . does not involve 'tolling' at all," but rather a recognition that "Mr.

Joseph has effectively been a party to an action against these defendants since a class action covering him was requested but never denied." *Id.*

And as did the Supreme Court in *American Pipe*, the *Joseph* court expressed concern that if all class members were required to file claims in order to insure that their claims do not become time-barred during the consideration of class certification, the objectives of Rule 23 would be defeated."

A large number of district courts have likewise held that *American Pipe* applies to § 13 and other time-for-suit provisions characterized as statutes of repose. *See Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 177 (D. Mass. 2009) (collecting cases and concluding that "all lower federal courts that examined the issue have concluded that *American Pipe* requires tolling of statutes of repose).[3]

---

[3]*See also Public Emps.' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 109 (S.D.N.Y. 2011) (applying *American Pipe* to Securities Act § 13); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 455-56 & n.19 (S.D.N.Y. 2005) (same); *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 31 (S.D.N.Y. 2002) (applying *American Pipe* to state-law fraudulent conveyance claims); *Arivella*, 623 F. Supp. 2d at 177-78 (six-year statute of repose for Employee Retirement Income Security Act of 1974); *Ballard v. Tyco Int'l, Ltd.*, No. MDL 02-MD-1135-PB, 2005 WL 1683598, at *7 (D.N.H. July 11, 2005) (three-year period adopt- ed in *Lampf* and Securities Act § 13); *Salkind v. Wang*, Civ. A. No. 93-10912-WGY, 1995 WL 170122, at *2-3 (D. Mass. Mar. 30, 1995) (three-year period adopted in *Lampf* ); *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, MDL No. 1658 (SRC), 2012 WL 6840532, at *5 (D.N.J. Dec. 20, 2012) (five-year period in 28 U.S.C. § 1658(b)(2)); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 465 F. Supp. 2d 687, 717 (S.D. Tex. 2006) (adopting *Joseph*); *Andrews v. Chevy Chase Bank, FSB*, 243 F.R.D. 313, 315-17 (E.D. Wis. 2007) (three-year statute of repose for Truth in Lending Act); *In re Discovery Zone Sec. Litig.*, 181 F.R.D. 582, 600 n.11 (N.D. Ill. 1998) (three-year period adopted in *Lampf* ); *World Sav. Bank, FSB*, No. C 11-05173 WHA, 2012 WL 294447, at *3-4 (N.D. Cal. Jan. 31, 2012) (three-year statute of repose for Truth in Lending Act); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1166 (C.D. Cal. 2010) (Securities Act § 13); *Hildes v. Andersen*, No. 08-cv-0008-BEN (RBB), 2010 WL 4811975, at *3-4 (S.D. Cal. Nov. 8, 2010) (three-year period adopted in *Lampf* ).

The *Indymac* decision also conflicts with Federal Circuit decisions that have applied *American Pipe* to "jurisdictional" provisions setting time limits for bringing claims against the United States. *Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010); *Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 583 F.3d 785, 792-93 (Fed. Cir. 2009); *Stone Container Corp. v. United States*, 229 F.3d 1345, 1354 (Fed. Cir. 2000).

b.    **The Rules Enabling Act does not bar *American Pipe*'s application to §13's three year limitations' period.**

The Second Circuit's decision in *Indymac* was based on a three-step analysis: (1) §13's three-year limitations period confers substantive rights on defendants, (2) the Enabling Act, 28 USC § 2072, provides that federal rules of procedure "shall not abridge, enlarge or modify any substantive right," and (3) holding that Rule 23 tolls the running of §13's three-year statute of limitation for unnamed class members abridges the substantive rights of defendants. Respectfully, this analysis is flawed.

First, it is difficult to discern how a statute that determines <u>when</u> a legal claim must be filed confers a substantive, rather than a procedural right. And if the three-year limitation in § 13 confers a substantive right upon defendants, then why do the other limitations provisions in § 13 not also confer substantive rights?

But even if the three-year limitations period in § 13 is seemed to confer a substantive right, application of the *American Pipe* rule does not abridge that right. As *American Pipe*, *Joseph*, and other courts have noted, when a representative action is filed pursuant to Rule 23, the claims of all persons within the parameters of the class have in fact "brought" their claims against the defendant.  It has long been held that, at least for federal causes of action, the effect

8

of Rule 23 is that the filing of a complaint stops the running of the statute of limitations. *See Henderson v. United States*, 517 U.S. 654, 657 n.2 (1996).

This is the only rational conclusion to be drawn from Rule 23's provisions. Named plaintiffs who file a putative class action sue "on behalf of all members" of the class. The class representatives must define the parameters of the class in order to satisfy Rule 23 and to permit communications to the class members. Rule 26 (a), (b), and (c). Class counsel must "fairly and adequately represent the interests of the class." Rule 23 (g). Unless a class member affirmatively opts out, he or she will be bound by a settlement or judgment on the merits. Thus, the court may fully adjudicate the rights of persons who have never been named parties.

Determining **how** legal claims may be filed in federal court is a clearly procedural matter that is not prohibited by the Enabling Act. The Supreme Court has ruled that, in resolving Enabling Act issues, it is not the substantive or procedural nature or purpose of the affected law, that matters, but the substantive or procedural nature of the Federal Rule. "The validity of a Federal Rule depends entirely upon whether it regulates procedure." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) (rejecting claim that Federal Rule 23 improperly overrode the prohibition of class actions seeking to recover penalties under New York law).[4]

In language clearly ignored in *Indymac*, the *Shady Grove Orthopedic* Court emphasized that a federal rule may affect a litigant's substantive rights so long as it governs only the procedure by which those rights are enforced and does not alter the rules of decision by which the court will adjudicate rights:

---

[4] The federal rules of procedure have "presumptive validity" with respect to both constitutional and statutory constraints. *Burlington N.R, Co. v. Woods*, 480 U.S. 1, 6 (1987).

> The test is not whether the rule affects a litigant's substantive rights; most procedural rules do. What matters is what the rule itself regulates: If it governs only "the manner and the means" by which the litigants' rights are "enforced," it is valid; if it alters "the rules of decision by which [the] court will adjudicate [those] rights," it is not. Applying that test, we have rejected every statutory challenge to a Federal Rule that has come before us. (citations omitted).

*Id*.

And specifically addressing Rule 23, the Court stated that:

> A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged**.**

*Id.* at 17.

Applying these principles clearly leads to the conclusion that the Enabling Act presents no bar to applying *American Pipe* to §13's three-year limitations period.  In so doing, the Court is simply governing the "manner and the means" by which the parties' rights are determined and not altering the rules of decision by which the parties' rights will be determined.

c.  **The *Indymac* approach will lead to chaos.**

As the Supreme Court and other federal courts have noted, a critical facet of the *American Pipe* ruling was concerns about judicial efficiency.[5] The path chosen by the Second Circuit will likely lead to the filing of thousands of individual lawsuits by class members concerned about the statute of limitations. Even class members who intend to opt **in** to the class would be forced to file individual actions if, as in the RMK Fund litigation, there is a risk that a

---

[5]  In the recent decision in *Credit Suisse Securities v. Simmonds*, 132 S.Ct 1414, 2012 U.S. Lexis 2535, ** n. 6, the Supreme Court stated that, in *American Pipe*, "we based our conclusion on the "efficiency and economy of litigation which is a principal purpose of Rule 23 class actions.

statute of repose might run before class certification is resolved.  These results would damage not only the courts, but also litigants on both sides.

And the adverse ramifications are not limited to Rule 23.  For statute of limitations purposes, there is no meaningful difference between a representative action under Rule 23 and lawsuits by trustees, executors, third-party beneficiaries, and others who are authorized by Rule 17 to sue in a representative capacity "without joining the person for whose benefit the action is brought." It is possible for beneficiaries of contracts, trust, and estates to "opt out" of such representative actions by asserting that the representing party is violating the beneficiary's legal rights.  But under the ruling in *Indymac*, if a so-called statute of repose has passed, the court would violate the Enabling Act by allowing such beneficiaries of such Rule 17 actions to pursue their own claims.

Also, if a 401(k) plan initiated a securities or other legal action on behalf of employees and then went out of business after a statute of repose had run, the holding in *Indymac* would bar the individual employees from filing their own claims.

Other unforeseen problems would no doubt arise. The critical point is that if the courts are not allowed to determine when a legal claim has been filed for limitations purposes plaintiff – a clearly procedural issue – then injustice will result.  For all these reasons, the Court should decline to follow the second Circuit's decision in *Indymac*.

2.      **Plaintiff did not opt out of the class action claims against Defendants by filing an arbitration proceeding.**

First, as a matter of fact, Plaintiff did not opt out of the RMK Funds closed end class action.  The Court's records contain the names of all class members who opted out, and Plaintiff

is not on the list.  The class action language in the statement of claim Plaintiff filed with FINRA did not constitute a class opt out.[6]  Indeed, at the time Plaintiff filed an arbitration claim, there had been no class certification and no directive from the Court regarding the mandatory procedure for opting out.

Moreover, FINRA rule 12204, which requires that investors filing arbitration claims give notice that they will not participate in a recovery from a class action "based upon the same facts and law" as the arbitration claim is both inapplicable and unenforceable under the circumstances of this case.

Plaintiffs' arbitration claim included common-law law claims not asserted in the class action, and it was based on particularized broker dealer duties and misconduct of no relevance to the claims in the class action (and which could not be asserted in a class action).

Furthermore, Plaintiff filed these claims in arbitration because Plaintiff had no ability to file them in any other forum.  As do all broker-dealers, Morgan Keegan required that Plaintiff agree, as part of opening an investment account, that any legal disputes would be resolved in arbitration.  Significantly, the arbitration agreement Plaintiff signed did not disclose that Plaintiff would not be able to participate in any claims against other entities that violated Plaintiff's legal rights.

It is in unconscionable for the securities industry, which includes FINRA, to create a contractual and arbitration structure through which investors are unknowingly deprived of their rights and remedies under the federal securities laws.  Plaintiff's coerced whocompliance with a

---

[6]  The statement of claim stated, at page 9, that "claimant is opting out of these class actions **as to Morgan Keegan & Company, Inc**" only.

FINRA rule of which he was not given fair notice cannot in fairness be deemed to destroy his

rights against the defendants herein.

Moreover, there is substantial authority that the filing of an individual lawsuit or

arbitration claim does not constitute an opting out of a related class action.  In *In re WorldCom,*

*Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 7958 * 9-10 (S.D.N.Y. 2005), the court stated that "It is

undisputed that pursuing an individual action or arbitration does not constitute notice of an

election to opt out of a class action.  See, e.g., *Berman v. L.A. Gear, Inc.*, 1993 U.S. Dist. LEXIS

14900, No. 91 Civ. 2653 (LBS), 1993 WL 437733, at *5 n.1 (S.D.N.Y. Oct. 26, 1993) (refusing

to recognize an opt-out by a class member who was maintaining an individual action before the

ruling court), aff'd, 29 F.3d 621 (2d Cir. 1994); *Supermarkets Gen. Corp. v. Grinnell Corp.*, 59

F.R.D. 512 (S.D.N.Y. 1973) (same), *aff'd, Supermarkets General Corp. v. Grinnell Corp.*, 490

F.2d 1183 (2d Cir. 1974)."

3.    **Plaintiff's Mississippi Securities Act claim is not barred by the five-year statute of repose.**

As to the Plaintiff's Mississippi state law claims, Mississippi courts emphasize that

"fraud can never be sanctioned" and hold that fraud tolls any applicable statutes of limitations

*and statutes of repose. Windham v. Latco of Mississippi, Inc*., 972 So.2d 608, 614 (Miss. 2008).

4.    **Plaintiff's Tennessee Securities Act and Tennessee Consumer Protection Act claim is not barred by the five-year statute of repose.**

Tennessee courts hold that fraudulent concealment tolls the statutes of limitations and

repose. *Cunha v. Cecil, No. E2006-01066-COA-R3-CV (Tenn. App. 1/31/2007) (Tenn. App.,*

*2007)(*fraudulent concealment can toll statute of repose*).-  Amini v. CTI Pet Systems, Inc.*, No.

E2005-01442-COA-R3-CV (4/24/2006) (Tenn. 2006) ("Fraudulent concealment often arises in

fraud cases, perhaps because the defendant having deceived the plaintiff once thinks nothing of deceiving him further….").

> **D.    Plaintiff's arbitration filing did not prevent *American Pipe's* tolling effect.**

Relying on the decision in *Wyser-Pratte Mgmt. Co. v. Telxon Corporation*, defendants contend that the filing of Plaintiff's arbitration claim against Morgan Keegan undermined the class action tolling effect of *American Pipe*. Plaintiff respectfully submits that the Court should reject this argument. *Wyser-Pratte* is both wrongly decided and inapplicable to this case.

First, the decision in *Wyser-Pratte* is clearly an improper narrowing of the Supreme Court's decisions in *American Pipe* and *Crown, Cork & Seal Co. Inc. v. Parker*, 462 U.S. 345 (1983), which neither held nor suggested that members of a putative class action would lose the tolling effect of the class action tolling if they filed an independent action. Three other circuits have subsequently reached precisely the opposite conclusion as that in *Wyser-Pratte*. *In re Worldcom Sec. Litig.,* 496 F.3d 245, 256. (2nd Cir. 2007); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008).

Plaintiff understands, of course, that the Court must follow Sixth Circuit precedent. That is the case, however, only when a Sixth Circuit decision is factually applicable to the case at hand. In this case, it is not. The ruling in *Wyser-Pratte* was premised on the policy concern that the filing of an independent "action" burdens the courts and parties with separate lawsuits. 413 F.3d at 568-69. But the Plaintiff's arbitration filing was not an "action[7]," and it had no negative

---

[7]  *See, e.g.,* T.C.A. §28-1-101*Har-Mar, Inc. v. Thorsen and Thorshov, Inc.,* 218 N.W.2d 751, 755 (Minn. 1974) (arbitration not an "action" within meaning of statutes of limitations); *Lewiston Firefighters Association v. Lewiston*, 354 S.2d 154, 167 (Me. 1976) (same); *Skidmore, Owings and Merrill v. Connecticut General Life*, 197 A.2d 83, 86 (Conn. 1963) (same).

14

effect whatsoever on the courts. Indeed, permitting class members to file arbitration claims without losing *American Pipe* tolling is consistent with the pro-arbitration policy of the federal courts.

Furthermore, as noted above, the filing of a separate claim against Morgan Keegan was strictly the result of Morgan Keegan's insistence that Plaintiff be permitted to sue them only in arbitration.

Under the unusual facts of this case, the binding precedent is *American Pipe,* not *Wyser-Pratte*.

**III.    Plaintiff has adequately stated a claim upon which relief may be granted as to the Defendants.**

Plaintiff's use of the term "Officer Defendants" is adequate under federal law.  *In re Bear Stearns Co., Inc. Sec., Der., and ERISA Litig.,* No. 08 MDL 1963, 2011  WL 223540 (S.D.N.Y. Jan. 19, 2011) (Sweet, J.)(plaintiff's use of reference to "Officer Defendants" in Complaint does not, standing alone, authorize dismissal under Rule 9(b)).

**IV.    Plaintiff satisfies the pleading requirement for fraud claims.**

Plaintiff alleged specific wrongdoing on the part of Defendant RMK High Income Fund, Inc., or its officers, employees or persons it controlled. See Plaintiff's Complaint [Doc. 1] ¶¶ 60-342. ¶

Plaintiff alleged specific wrongdoing on the part of Defendant RMK Strategic Income Fund, Inc., or its officers, employees or persons it controlled.  See Plaintiff's Complaint [Doc. 1] ¶¶ 60-342. ¶

Plaintiff alleged specific wrongdoing on the part of Defendant RMK Advantage Income Fund, Inc., or its officers, employees or persons it controlled.  See Plaintiff's Complaint [Doc. 1] ¶¶ 60-342. ¶

Plaintiff alleged specific wrongdoing on the part of Defendant RMK Multi- Sector High Income Fund, Inc., or its officers, employees or persons it controlled.  See Plaintiff's Complaint [Doc. 1] ¶¶ 60-342.

Plaintiff alleged specific wrongdoing on the part of Defendant Regions Financial Corporation, or its officers, employees or persons it controlled.  See Plaintiff's Complaint [Doc. 1] ¶¶1, 5, 22, 32, 48-50, 52, 56, 57, 59, 60, 71, 248, 372, 377, 384, 425. ¶

Plaintiff alleged specific wrongdoing on the part of Defendant MK Holding, Inc., or its officers, employees or persons it controlled.  See Plaintiff's Complaint [Doc. 1] ¶¶ 49, 50, 60, 248, 425, 487, 511, 520. ¶

Plaintiff alleged specific wrongdoing on the part of Defendant Morgan Asset Management, Inc., or its officers, employees or persons it controlled.  See Plaintiff's Complaint [Doc. 1] ¶¶ 5-9, 12, 17-20, 28, 30, 31, 48-53, 56-60, 67, 68, 71, 72, 74, 110, 112, 122, 127, 130-31, 230-39, 242, 248, 271, 295-96, 328, 374, 382, 383, 385, 387, 392-93, 397, 398, 404, 409, 420, 425, 490, 497, 499, 504-06, 526, 538. ¶

Plaintiff alleged specific wrongdoing on the part of Defendant Allen Morgan.  See Plaintiff's Complaint [Doc. 1] ¶¶ 12, 19, 53, 56, 60, 420, 497, 499, 504-06, 526, 538. ¶

Plaintiff alleged specific wrongdoing on the part of Defendant Alderman.  See Plaintiff's Complaint [Doc. 1] ¶¶ 12, 19, 53, 56, 58-60, 71, 420, 443, 465, 466, 497, 499, 504-06, 526, 538.

16

Plaintiff alleged specific wrongdoing on the part of Defendant Anthony.  See Plaintiff's Complaint [Doc. 1] ¶¶ 12, 19, 53, 56, 60, 497, 499, 504-06, 526, 538. ¶

Plaintiff alleged specific wrongdoing on the part of Defendant Weller.  See Plaintiff's Complaint [Doc. 1] ¶¶ 12, 19, 30, 55, 56, 67, 72, 130, 231-32, 275, 277-78, 294, 302, 408-09, 413-415, 420, 443, 497, 499, 504-06, 526, 538.

Plaintiff alleged specific wrongdoing on the part of Defendant Sullivan.  See Plaintiff's Complaint [Doc. 1] ¶¶ 12, 19, 31, 54, 56, 67, 72, 130, 233, 275, 277-78, 294, 302, 316, 326, 407-09, 412-414, 420, 443, 497, 499, 504-06, 526, 538.

Plaintiff alleged specific wrongdoing on the part of Defendant Kelsoe.  See Plaintiff's Complaint [Doc. 1] ¶¶ 5-12, 18, 19-21, 31, 54, 56, 67, 68, 72, 112, 130, 135-50, 233, 275, 277-78, 294, 302, 316, 326, 407-09, 412-414, 416-20, 443, 497, 499, 504-06, 526, 538.

### A.     Plaintiff adequately alleges loss causation.

This Court has previously held that loss causation is an affirmative defense unsuitable for adjudication in a motion to dismiss. *In re Regions Morgan Keegan*, p. 25 (citations).  However, in any event, Plaintiff adequately pleads loss causation.  See Plaintiff's Complaint pp. 183, 190, 197.

### B.     Plaintiff adequately alleges scienter.

Plaintiff's complaint includes specific facts on strong evidence of scienter by alleging opportunity to commit fraud in the Funds' NAV (¶¶ 124-182).  , specific examples of fraud (¶¶ 140-163), and the enormous financial incentives to commit fraud by inflating the NAV of the Funds.  (¶¶ 67).  See also Plaintiff's Complaint ¶¶ 404-420.  However, it must be noted that none

of these instances which can prove scienter were available to a reasonably diligent Plaintiff within two years of the filing of the Complaint on August 22, 2013.

### C.    Plaintiff adequately alleges loss causation.

While loss causation is not an element of a § 11 claim; it is an affirmative defense unsuitable for adjudication in a motion to dismiss. *In re Regions Morgan Keegan*, p. 25 (citations).  However, Plaintiff has adequately alleged loss causation.  See Plaintiff's Complaint ¶¶ 224, 245-46, 255, 401-03, 459, 501, 513, and 536.

### D.    Plaintiff adequately alleges reliance.

Plaintiff are entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated in part upon omissions of material fact which there was a duty to disclose.  Plaintiff is entitled to a presumption of reliance on Defendants' material misrepresentations and omissions pursuant to the fraud-on-the-market doctrine because:

1.  The Funds' shares were actively traded in an efficient market on the NYSE;

2.  The Funds' shares traded at high weekly volumes ;

3.  As a regulated issuer, the Funds' filed periodic public reports with the SEC;

4.  The Funds regularly communicated with public investors by means of established market communication mechanisms, including through regular dissemination of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services;

5.  The market reacted promptly to public information disseminated by the Funds;

6. The material misrepresentations and omissions alleged herein would tend to induce a reasonable investor to misjudge the value of the Funds' shares; and

7. Without knowledge of the misrepresented or omitted material facts alleged herein, Plaintiff purchased the Funds securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed.

However, Plaintiff also specifically alleged reliance at paragraphs 229, 421-22, 429.

**E.     Plaintiff's claims are not derivative.**

Federal courts interpreting federal securities law expressly note that "direct and derivative actions based on the same underlying conduct are not mutually exclusive." *Smith Barney*, 2011 WL 350289, at *5.  In distinguishing *Ex parte Regions Financial Corp., No. 1090425, 2010 WL 3835727 (Ala. Sept. 30, 2010) ("Rice")*, this Court correctly cited *Surebeam* as "noting that merely because the same allegations may support a derivative mismanagement claim and a federal securities law claim does not mean that a plaintiff must bring one claim instead of the other." *In Re Regions Morgan Keegan Open-End Funds*, 2010 WL 5464792, at *5 (citing *In re SureBeam Corp. Securities Litigation*,  2005 WL 5036360 (S.D. Cal. 2005), at *13); *Butterworth v. Morgan Keegan & Co*., 2012 U.S. Dist. LEXIS 140209 (N.D. Ala. 2012)(investor claims arising from RMK Funds are not exclusively derivative).

**F.     Plaintiff alleged facts sufficient to demonstrate that the defendants are control persons under Section 15 or 20.**

Control person liability is not an issue appropriate for consideration of a motion to dismiss.  The Court has previously concluded that "whether a party has exercised the requisite

control 'involves a factual analysis best saved for later determination.'" *In re Regions*, 743

F.Supp.2d at 761 (citations). However, in any event, Plaintiff has adequately alleged control

person liability.  See Plaintiff's Complaint ¶¶ 1, 5, 19, 48, 55, 60, 72, 218, 259, 408, 471, 489,

491, 505-09, 529, 538.

### G.     The Defendants' defenses are severely limited under the Mississippi Securities Act.

The only two statutory defenses allowed to a defendant under the Mississippi Securities

Act are as follows:[8]

- Defendant sustains the burden of proof that he did not know, and in the exercise
  of reasonable care could not have known, of the untruth or omission.

- That the action is barred by the statute of limitations.[9]

Both of these issues are fact intensive inquiries that are inappropriate for resolution in a

motion to dismiss.  However, in any event, the evidence in this case, including multiple law

enforcement findings of fact, clearly show that that the Defendants committed securities laws

violations knowingly.  Therefore, the first defense is not available.

The second defense potentially available to Morgan Keegan also fails because several

violations of the state and federal law, Mississippi Securities Act, and the Tennessee Consumer

---

[8] Mississippi Securities Act § 75-71-717. Liability to buyers for illegal or fraudulent sales or offers; Mississippi Securities Act § 75-71-719. Persons jointly and severally liable with seller; contribution ("… did not know, and in exercise of reasonable care could not have known of the existence of the facts by reason of which the liability is alleged to exist.").

[9] Mississippi Securities Act § 75-71-725. Limitation of actions.
No action shall be maintained to enforce any liability created under Section 75-71-717(a)(2) unless brought within two (2) years after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under Section 75-71-717(a)(1) unless brought within two (2) years after the violation upon which it is based.

Protection Act, including false statements and materially deceptive marketing materials through December 2007, distribution of a materially misleading Prospectus into 2008[10], and materially misstated financial statements at least through 2009.  In 2010, the RMK Fund Prospectuses underwritten by Morgan Keegan, the RMK Fund brochures created, printed, and distributed by Morgan Keegan, and the RMK Fund financial statements sponsored by Morgan Keegan's accounting services, were all found to be fraudulent by multiple state law enforcement agencies. Thus, tolling occurs on claims under state and federal law at least through 2012.

## V.  Plaintiff has standing to bring this action.

Federal courts hold that the issue traceability of a securities offering for purposes of standing is properly within the scope of a motion for summary judgment, not a motion to dismiss.  *In re Puda Coal Sec. Inc.,* S.D.N.Y, 11 Civ. 2598, October 1, 2013 (discussing methods of showing traceability).  However, in any event, Plaintiff has adequately set forth facts providing Plaintiff standing to bring Plaintiff's claims against Defendants, namely, that Plaintiff purchased shared of the Funds at issue in the case.  See Plaintiff's Complaint ¶¶ 43, 462, 472, 478, 483, 387, 493, 500-01, 522.

## VI.  The arbitration decision does not preclude Plaintiff's claims in this case.

For a number of reasons, the FINRA arbitration decision denying Plaintiff's claims against Morgan Keegan should not be deemed res judicata with respect to plaintiffs' claims against different defendant in this case.  These reasons include:

---

[10] Section 10(b) and 10b-5 violation continues so long as it so long as the misleading statements remain "alive". *Ross v. A.H. Robins Inc.,* 465 F.Supp. 904 (S.D.N.Y. 1979), A. Jacobs, The Impact of Rule 10b-5 § 88.04(b) at 4-14, (rev.1978) and cases cited therein.  Rather, a "particular duty to correct a specific prior statement exists as long as traders in the market could reasonably rely on the statement." 2 A. Bromberg, Securities Law, Fraud, § 6.11(543) (1977).

- Res judicata principles are inapplicable because Plaintiff could not have sued many, if not all, of the defendants in the arbitration proceeding.

- Defendants were not in privity with Morgan Keegan with respect to the arbitration case.

- The issues in this case differ from those in the arbitration and were not decided by the arbitrators.

- Applying res judicata would be inconsistent with due process and fundamental fairness.

- There is considerable doubt among federal courts as to whether arbitration awards should preclude subsequent federal claims against different parties.

### A.  The issues in this case differ from those in the arbitration and were not decided by the arbitrators.

Res judicata bars a subsequent action "if the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. _Becherer v._ Merrill Lynch, Pierce, Fenner & Smith, Inc., 193 F.3d  415, 22 (6th Cir. 1999). Identity of claims means "an identity of the facts and events creating the right of action and of the evidence necessary to sustain each action." *Sanders Confectionery Prods. v. Heller Fin*., Inc., 973 F.2d 474, 484 (6th Cir. 1992) (emphasis added).

In this case neither the third or fourth factors set forth above our present.  No claim asserted in this case was resolved in the underlying arbitration.  Although this case relies on some of the same statutory and common law violations claims raised in the arbitration

proceeding, the arbitrators decided only whether there were legal violations by Morgan Keegan. Because the defendants herein were not parties to the arbitration, the arbitrators have no power or ability to determine if defendants violated the law and damaged Plaintiff.

Furthermore, because Morgan Keegan's role and duties with respect to the sale of RMK Funds to Plaintiff was entirely different from that of defendants, there clearly is no "identity of the facts and events creating the right of action and of the evidence necessary to sustain each action.

Thus, for example, the arbitrators may well have concluded that the RMK Funds' prospectuses were false and misleading in some material respect, but that entities and officers apart from Morgan Keegan were responsible for the misleading materials.  Similarly, the arbitrators might have determined that James Kelsoe, the RMK Funds portfolio manager, engaged in fraudulent conduct, but further concluded that he did so as an agent of MAM, not Morgan Keegan.

In this case, therefore, the allegedly wrongful conduct of the defendants in the prior and subsequent actions was substantially different.  Res judicata does not apply under such circumstances.

      **B.**       **Res judicata principles are inapplicable because Plaintiff had no ability to sue any or all defendants in the arbitration proceeding.**

The purpose of *res judicata* is to protect litigants from the burden of relitigating claims and issues with the same party, and to promote judicial economy by preventing needless litigation.  *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979).  "A claim is precluded "because of a determination that it should have been advanced in an earlier suit*." Dover v. United States*, 2010 U.S. App. LEXIS 4662, * 6, n. 3 (6th Cir. 2010) (emphasis added); *see also*

23

*Federated Dep't. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, (1981) ("[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."

Thus, one of the elements that must be shown by a defendant asserting res judicata is that "the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted; emphasis added). If a claim could not have been asserted in the preceding litigation, res judicata does not apply. *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 328, 1955) (judgment in first case cannot extinguish claims that could not have been sued upon at that time);

*Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163, 166 (3d Cir. 1986) (res judicata does not apply to claims that could not have been sued upon in the prior action); *Jim Beam Brands Co. v. Beamish & Crawford, Ltd.*, 937 F.2d 729, 736 (2d Cir. 1991) (if an injunction against trademark infringement was not available in prior proceeding, res judicata would not apply).

The corporate Defendants in this case have not and could not show that Plaintiff could have filed claims against them in the FINRA proceeding.  To the contrary, the corporate defendants in this case and most of the individual defendants are not FINRA members, nor are they affiliated with a FINRA member.  Entities that are not in one of those categories may not be sued in FINRA arbitration.

Plaintiff filed claims against Morgan Keegan in arbitration because Plaintiff had no choice.  Like all broker-dealers, Morgan Keegan requires prospective clients to sign a customer

agreement requiring that any legal claims be resolved in arbitration.[11]  By so doing, Morgan

Keegan made it impossible for Plaintiff to file claims against Morgan Keegan and the defendants

herein in one legal proceeding.  Thus, it is Morgan Keegan and Defendants who have caused

piecemeal litigation.

Under these circumstances, res judicata has no application.  Indeed, to prevent Plaintiff

from pursuing claims they had no prior opportunity to assert in the arbitration would be a

deprivation of due process.  The Due Process Clause of the United States Constitution protects

the right to a full and fair hearing on an issue, and therefore collateral estoppel cannot be applied

against a party as to issues not fully and fairly litigated.  *Blonder-Tongue Lab., Inc. v. University

of Illinois Foundation*, 402 U.S. 313, 329, 1971); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322,

332(1979).

### C.    The federal courts have been cautious and selective in giving preclusive effect to arbitration awards.

Federal courts are not required to confer res judicata effect on unconfirmed arbitration

awards, and preclusive effect is accorded, if at all, based on judicially created rules.  *Kisby Lees

Mech. LLC v. Pinnacle Insulation, Inc.,* 2012 U.S. Dist. LEXIS 136313  * 14 (Sep. 34, 2012,

D.N.J.)  The full-faith-and-credit statute (28 U. S. C. § 1738) requires that federal courts give the

same preclusive effect to a state's *judicial proceedings* as would the courts of the state rendering

the judgment,  But since arbitration is not a judicial proceeding, the statute does not apply to

arbitration awards.  *McDonald* v.*West Branch*, 466 U.S. 284, 287-88 (1984) (refusing to confer

res judicata effect to a prior arbitration award in a lawsuit under federal civil rights laws).

---

[11] See Morgan Keegan Client Agreement Exhibit C to Declaration of James Dunlap.

In  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 222-24 (1984), the Supreme Court in Byrd refused to give an arbitration decision res judicata or  collateral estoppel effect in a case brought under the federal securities laws, noting that "that courts may directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding." *See also Brown v. Union Pac. R.R. Co*., 2009 U.S. Dist. LEXIS 34738,* 9 (Aug. 24, 2009, E. D. Ark.) (when a claim is brought pursuant to a federal statute or independent source, the claim is not precluded even if there was previous arbitration), *citing McDonald v. West Branch,* 466 U.S. 284, 292,  (1984). "Traditional principles of stare decisis and res judicata are given significantly less weight in arbitration proceedings" *NLRB v. Yellow Freight Systems, Inc.*, 930 F.2d 316, 319-21 (3d Cir. 1991); *see also General Comm. of Adjustment v. CSX Corp.*, 893 F.2d 584, 593 n.10 (3d Cir. 1990); *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 385 (2d Cir. 1989); *Kovats v. Rutgers*, 749 F.2d 1041, 1048 (3d Cir. 1984).

The Sixth Circuit has recently noted that "whether an arbitrator's decision should be given preclusive effect is a difficult question."  The the issue of whether to give collateral estoppel effect to findings from an arbitration is a fact-sensitive question, committed to the discretion of the trial court, and is an issue that must be considered with informed care.  *Alton v. Unisource Network Servs.,* 2004 U.S. Dist. LEXIS 25886, * 12 (N.D. Ill., Dec. 2004)

There are good reasons for caution in this case.  FINRA arbitrators need not be lawyers, do not conduct legal research, are not required to follow the law, do not explain their rulings, and can be reversed only in the most extreme circumstances.  Furthermore, Plaintiff could not have sued defendants in the FINRA arbitration, and Plaintiff was not given notice, and the arbitration agreement Plaintiff signed with did not disclose that the arbitration award might preclude them from suing other entities who had violated Plaintiff's rights.

26

**C.  The element of privity has not been established by defendants.**

Judgments may be preclusive only as to parties and their privies, and privity is limited to "a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented."  *United States v. Vasilakos*, 508 F.3d 401, 406 (6th Cir. 2007), *citing Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 481 (6th Cir. 1992).

Privity, for the purposes of applying the doctrine of res judicata, is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents **precisely the same right in respect to the subject matter involved**.  *FTC v. Garvey*, 383 F.3d 891, 897 (9th Cir. 2004) (emphasis added).  "Concepts summarized by the term privity are looked to as a means of determining whether the interests of the party against whom claim preclusion is asserted were represented in prior litigation".  *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995).

Defendants have made no meaningful effort to meet these federal privity standards. There has been no showing that with respect to the claims in the underlying arbitration, that defendants are successors in interest to Morgan Keegan, or that defendants controlled the arbitration, or that Morgan Keegan represented defendants' interests in the arbitration proceeding.  *See United States v. Vasilakos*, 508 F.3d 401, 406 (6th Cir. 2007),

Implicitly conceding their inability to meet these federal standards, defendants rely on Tennessee cases applying a difference privity test. Although defendants have also failed to satisfy the Tennessee standard, it has no application in this federal action asserting federal statutory claims.  Although there appears to be no authority directly resolving the choice of law issue, the Supreme Court's decision in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1984),

27

clearly indicates that in cases brought under the federal securities laws, when an arbitration

award is asserted to be res judicata, a federal court should apply federal law principles in

deciding the issue.  *Id.* at 222-24.

Furthermore, defendants are estopped from contending that Morgan Keegan and Morgan

Asset Management ("MAM") were in privity with respect to the arbitration proceeding.  In the

answer Morgan Keegan filed to the statement of claim in a similar arbitration claim filed by

Plaintiff's counsel, Morgan Keegan aggressively argued that it was a separate and distinct entity

from MAM:

> Claimant, in his Statement of Claim, repeatedly and improperly attempts to blur
> the corporate distinctions between Morgan Keegan, MAM, the Funds' investment
> adviser, and the Funds. In an attempt to mislead this Panel, Claimant attempts to
> argue that there is no distinction between Morgan Keegan and MAM and that
> Morgan Keegan and MAM are essentially alter egos of each other. (See SOC, at
> pp. 61-62). There is no dispute, however, that **MAM, a separate corporation
> and a separately regulated entity by the Securities and Exchange
> Commission, served as the registered investment adviser for the Funds, and
> managed the Funds**. . . . . Despite Claimant's unsupported rhetoric, these
> indisputably separate and distinct corporate entities were clearly identified in each
> Fund's disclosure documents. . . . . **Therefore, all references in this Answer to
> Morgan Keegan shall refer only to Morgan Keegan, and not to MAM or the
> Funds, separate and distinct entities from Morgan Keegan, which are not
> named parties and are not members of FINRA**.

*See* Morgan Keegan Answer to Statement of Claim in *John Hall v. Morgan Keegan*,

FINRA Arbitration # 10-1538, Exhibit B to James Dunlap Declaration, at pp. 4-5.

In addition, in another RMK Fund arbitration case against Morgan Keegan, it made the

following assertion in trying to prevent discovery requests targeted at MAM:

> Morgan Keegan is an independent and separate entity from the other
> companies…. Likewise **Morgan Keegan and Morgan Asset Management are
> separately organized and regulated companies with independent functions**.
> Unlike Morgan Keegan, which is regulated as a broker-dealer under the auspices
> or' the Securities Act of 1933 and the Securities Exchange Act of 1934, MAM is a

registered investment advisor governed by the Investment Advisor Act of 1940. See 15 U. S. C. § 80b et seq. **MAM is a separate corporation with separate regulatory responsibilities, separate management duties related to the Fund and a separate Board of directors**. Neither the Fund nor MAM is a subsidiary of Morgan Keegan….To simply blur all these corporate entities into one using a vague "alter ego" allegation is contrary to the facts and the law.

Morgan Keegan's Objection to Claimant's Motion for Issuance of Subpoenas, *Holloway v. Morgan Keegan,* FINRA No. 08-03949, March 19, 2009 (Dunlap Decl. ¶ 2).

As a result of these contentions, defendants are judicially estopped from claiming that MAM and Morgan Keegan were in privity with respect to the underlying arbitration.  18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) ("absent any good explanation, a party should not be allowed to gain an advantage by litigating on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

Furthermore, as discussed in the following section, defendants had clearly different duties, roles, and interest with respect to the RMM funds purchased by Plaintiff.[12]

---

[12] It should be noted that the fact that the corporate defendants in this case were formerly affiliated with Morgan Keegan does not satisfy the element of privity.  *See Dorchen/Martin Assocs. v. Brook of Boyne City, Inc.,*2013 U.S. Dist. LEXIS 77395, ** 20-21 (June 3, 2013, E.D. Mich.) ("The parent-subsidiary relationship does not of itself establish privity. Preclusion is particularly appropriate if the parent controlled litigation against a subsidiary, or brought or defended an action for the benefit of a subsidiary. If different subsidiaries are involved in successive litigation, however, extra care may be required in assaying the control relationships involved, particularly if there are independent interests."), *citing* Wright & Miller § 4460;  *Usina Costa Pinto, S.A. v. Louis Dreyfus Sugar Co., 933 F. Supp.* 1170 (S.D.N.Y. 1996) (denying motion  on collateral estoppel grounds, finding no privity between subsidiaries of same foreign corporation).

**D.     Applying res judicata would contravene principles of due process and fundamental fairness.**

As noted above, because the Due Process Clause of the United States Constitution protects the right to a full and fair hearing on an issue, collateral estoppel cannot be applied against a party as to issues not fully and fairly litigated.[13]  For a prior action to be deemed res judicata, <u>the parties must have had "a full and fair opportunity to litigate</u>." *Montana v. United States*, 440 U.S. 147, 153 (1979) (emphasis added).  Dismissing this case on res judicata grounds would be shockingly unfair because:

- Plaintiff had no opportunity to pursue claims against most or all of defendants in the FINRA arbitration

- Morgan Keegan did not disclose to Plaintiff that by agreement to arbitrate legal claims against Morgan Keegan, Plaintiff was also agreed to waive any opportunity to file claims against numerous other entities that have responsibility for their losses.

- The arbitration decision was made by non-judges who do no legal research, do not have to follow the law, did not indicate that they were resolving any issues related to the conduct of the Defendants herein, and did not explain the basis for their denial of Plaintiff's claims.

- The arbitrators did not adjudicate the lawfulness of the conduct of the Defendants in this case.

---

[13]  *Blonder-Tongue Lab., Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 1971); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332(1979).

Dated: January 13, 2014.

**s/James A. Dunlap Jr.**
James A. Dunlap Jr., Esq.
**JAMES A. DUNLAP JR. & ASSOC. LLC**
Georgia State Bar No.  003280
310 Windsor Gate Cove NE
Atlanta, Georgia  30342
404-354-2363
404-745-0195 (fax)
jim@jamesdunlaplaw.com

Christopher S. Campbell
Laura S. Martin
**HARRIS SHELTON HANOVER WALSH, PLLC**
One Commerce Square Building
40 S. Main Street, Suite 2700
Memphis, Tennessee 38103

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2014, a copy of the foregoing document(s) was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Kevin C. Logue
PAUL HASTINGS LLP
75 East 55th Street
New York, New York 10022
(212) 318-6039
(212) 230-7620 (fax)
keviulogue@paulhastings.com
Counsel for Defendants RMK High Income Fund, Inc., RMK Strategic Income Fund.
Inc., RMK Advantage Income Fund, Inc., and RMK Multi-Sector High Income Fund, Inc.

PeterS. Fruin
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000
(205) 254-1999 (fax)
pfruin@maynardcooper.com

Shepherd D. Tate
Michael A. Brady
BASS, BERRY & SIMS PLC
The Tower at Peabody Place
100 Peabody Place
Memphis, Tennessee 38103
(901) 543-5900
(901) 543-5999 (fax)
state@bassberry.com
mbrady@bassberry.com
Counsel for James C. Kelsoe, Jr., Brian B. Sullivan, Joseph Thompson Weller, Allen B.

Morgan, and J. Kenneth Alderman

R. Harold Meeks Jr.
JAMES-BATES-BRANNAN-GROOVER-LLP
3399 Peachtree Road, NE Suite 1700
Atlanta, Georgia 30326
Telephone: (404) 997-6020
Facsimile: (404) 997-6021
hmeeks@jamesbatesllp.com
Counsel for Defendant Carter Anthony

Christopher S. Campbell
Laura S. Martin
HARRIS SHELTON HANOVER WALSH, PLLC
One Commerce Square Building
40 S. Main Street, Suite 2700
Memphis, Tennessee 38103
(901) 525-1455
(901) 526-4086 (fax)
ccampbell@harrisshelton.com
Imartin@harrisshelton.com
Counsel for Plaintiff

**s/James A. Dunlap Jr.**
James A. Dunlap Jr., Esq.